**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY**, | § § § | **Misc. No.** |
| Plaintiff, | § § | **In re: No. 3:14-cv-03719-CMC** |
| | § | **UNITED STATES DISTRICT** |
| v. | § | **COURT FOR THE** |
| | § | **DISTRICT OF SOUTH CAROLINA** |
| **CHARLES DAVID WOOD, JR.; AMS STAFF LEASING, INC. D/B/A AMS STAFF LEASING CORPORATION; BRECKENRIDGE ENTERPRISES, INC. D/B/A AMS STAFF LEASING II; AMS STAFF LEASING II, INC.; HIGHPOINT RISK SERVICES, LLC; AND ASPEN ADMINISTRATORS, INC.,** | § § § § § § § § § | **COUMBIA DIVISION** |
| Defendants. | § § | |

<u>**NON-PARTY HIGHPOINT ADMINISTRATIVE SERVICES, INC.'S
MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, REQUEST FOR
ATTORNEYS' FEES AND SANCTIONS, AND BRIEF IN SUPPORT**</u>

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

C. Dunham Biles
Texas Bar No. 24042407
Katie M. Ackels
Texas Bar No. 24078948
2100 Ross Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 722-7100
Facsimile: (214) 722-7111
Dunham.Biles@lewisbrisbois.com
Katie.Ackels@lewisbrisbois.com

**ATTORNEYS FOR HIGHPOINT
ADMINISTRATIVE SERVICES, INC.**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT .................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........................................... 4

    A.    The Underlying Lawsuit And Parties. ...................................................4

        1.    Plaintiff ...................................................................................4

        2.    Defendants ..............................................................................5

        3.    Non-Party HP Admin...............................................................5

        4.    The Relationship Among Plaintiff And Defendants...................6

        5.    The Claims Asserted ................................................................7

    B.    Plaintiff's Grossly Overbroad, Unduly Burdensome, And Otherwise
        Improper Subpoena To HP Admin—A Non-Party To The Lawsuit. .....................7

    C.    Plaintiff Ignores HP Admin's Diligent Efforts To Resolve Issues Related To
        The Subpoena, Plows Forward With Improper Discovery, And Forces HP
        Admin To Seek Judicial Intervention. ...................................9

III. SUMMARY OF THE ARGUMENT ................................................................. 12

IV. APPLICABLE LEGAL STANDARDS ............................................................ 13

    A.    Motion To Quash And For Protective Order. .......................................13

    B.    Awarding Attorneys' Fees And Sanctions............................................16

V. ARGUMENTS AND AUTHORITIES............................................................... 17

    A.    The Court Should Quash The Subpoena And Enter A Protective Order
        Because The Subpoena Seeks Cumulative And Duplicative Information And
        Is Overly Broad And Unduly Burdensome............................................17

        1.    The Court should quash the Subpoena because the Subpoena seeks
            cumulative and duplicative information available from other
            sources—namely, Defendants, most of whom have not been
            deposed. ...................................................................17

2. The Court should quash the Subpoena because the topics listed in the Subpoena are grossly overly broad, unduly burdensome, irrelevant, and otherwise improper. .........................................................20

B. The Court Should Award HP Admin Its Attorneys' Fees And Costs and Enter Appropriate Sanctions To Ensure Companion's Compliance With Its Discovery Obligations. ..........................................................................................24

VI. CONCLUSION.................................................................................................... 25

# TABLE OF AUTHORITIES

## U.S. Supreme Court Cases

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ............................................................................................. 16

## Federal Court Cases

*Am. Fed'n of Musicians of the United States & Can. v. Skodam Films, LLC*,
    313 F.R.D. 39 (N.D. Tex. 2015) ................................................... 14, 15, 16, 20, 21
*Areizaga v. ADW Corp.*,
    2016 U.S. Dist. LEXIS 45494, 314 F.R.D. 428 (N.D. Tex. 2016) ........................ 16
*Carroll v. Variety Children's Hosp.*,
    2007 U.S. Dist. LEXIS 62214 (E.D. Tex. Aug. 22, 2007)..................... 4, 14, 19, 23
*Dondi Properties Corp. v. Commerce Sav. & Loan Assoc.*,
    121 F.R.D. 284 (N.D. Tex 1988) ........................................................................ 24
*Harris v. Amoco Prod. Co.*,
    768 F.2d 669 (5th Cir. 1985).............................................................................. 16
*In re Terra Int'l*,
    134 F.3d 302 (5th Cir. 1998).............................................................................. 15
*Merrill v. Waffle House, Inc.*,
    227 F.R.D. 475 (N.D. Tex. 2005) ....................................................................... 15
*Positive Black Talk, Inc. v. Cash Money Records, Inc.*,
    394 F.3d 357 (5th Cir. 2004).................................................................. 4, 14, 19, 23
*United States v. Garrett*,
    571 F.2d 1323 (5th Cir. 1978)............................................................................. 15
*Williams v. City of Dallas*,
    178 F.R.D. 103 (N.D. Tex. 1998) ............................................................. 14, 15, 20
*Wiwa v. Royal Dutch Pet. Co.*,
    392 F.3d 812 (5th Cir. 2004)......................................................................... 14, 15

## Federal Rules and Regulations

FED. R. CIV. P. 26.................................................................................................. 4, 17
FED. R. CIV. P. 26(b)(1) .................................................................................. 14, 20, 24
FED. R. CIV. P. 26(c)(1)........................................................................................... 15
FED. R. CIV. P. 26(c)(3)........................................................................................... 16
FED. R. CIV. P. 37(a)(5).......................................................................................... 16
FED. R. CIV. P. 45.................................................................................................. 4, 17
FED. R. CIV. P. 45(d)(1) ...................................................................................... 16, 24
FED. R. CIV. P. 45(d)(3) .................................................................................. 13, 19, 23

**State Rules and Regulations**

Local Rule 5.1(a) ................................................................................................................... 24

**Additional Authorities**

*Enstar Group Limited Completes Acquisition of Companion Property and Casualty
Insurance Company*, ENSTAR GROUP LIMITED,
http://www.enstargroup.com/releasedetail.cfm?ReleaseID=893174 (January 27, 2015)....... 4, 5
Roddie Burris, *Insurance Firm Opening U.S. Headquarters in Richland*, THE STATE,
(October 19, 2015), http://www.thestate.com/news/business/article40289790.html.............. 4, 5

Non-party Highpoint Administrative Services, Inc. ("HP Admin") files this Motion to Quash, Motion for Protective Order, Request for Attorneys' Fees and Sanctions, and Brief in Support (the "Motion") against Companion Property and Casualty Insurance Company ("Companion" or "Plaintiff"), as follows:

## I.
## PRELIMINARY STATEMENT

Companion initiated a lawsuit against Charles David Wood, Jr.; AMS Staff Leasing, Inc. d/b/a AMS Staff Leasing Corporation; Breckenridge Enterprises, Inc. d/b/a AMS Staff Leasing II; AMS Staff Leasing II, Inc.; Highpoint Risk Services, LLC; and Aspen Administrators, Inc. (together, "Defendants") in the United States District Court, Southern District of South Carolina, Columbia Division (the "Lawsuit") nearly two years ago.[1] The Lawsuit revolves around twenty-one claims and counterclaims asserted by the parties, though many of Companion's claims are merely the inverse of Defendants' counterclaims (*i.e.*, Companion seeks declarations that Defendants take nothing).[2]

To date, Plaintiff has taken the deposition of only <u>one</u> defendant—namely, AMS.[3] Other Defendants were scheduled to be deposed as follows:  (1) Wood on Thursday, July 28, 2016; (2) Aspen on Friday, July 29, 2016; and (3) Highpoint on Friday, July 29, 2016.[4] HP Admin understands, however, that on July 24, 2016, Companion unilaterally cancelled those

---

[1] *See* Complaint filed on September 19, 2014, attached to Highpoint Administrative Service, Inc.'s Appendix in Support of Its Motion to Quash, Motion for Protective Order, Request for Attorneys' Fees and Sanctions, and Brief in Support ("App." 1).

[2] *See* Second Amended Complaint (App. 2); First Amended Answer and Counterclaims (App. 3).

[3] *See* Plaintiff's Second Amended Notice of Deposition of Defendant AMS Staff Leasing, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 4).

[4] *See* Plaintiff's Amended Notice of Deposition of Defendant Highpoint Risk Services, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 5); Plaintiff's Amended Notice of Deposition of Defendant Aspen Administrators, Inc. pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 6); Amended Notice of Deposition of Charles David Wood, Jr. (App. 7).

**NON-PARTY HIGHPOINT ADMINISTRATIVE SERVICES, INC.'S**
**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, REQUEST FOR**
**ATTORNEYS' FEES AND SANCTIONS, AND BRIEF IN SUPPORT**                    **PAGE 1**
4829-0841-1446.1

depositions.   Wood's deposition has been rescheduled for September 9, 2016, and the depositions for Aspen and Highpoint are now scheduled for September 16, 2016.[5]

Nonetheless, Companion purports[6] to have served on HP Admin a subpoena for a corporate representative deposition on July 21, 2016, in which Companion lists twenty-three overly broad, unduly burdensome, duplicative and irrelevant topics.[7]  Accordingly, on July 8, 2016, HP Admin objected to the subpoena on several grounds including improper service, failure to include the required witness fee, failure to confer on the date and location of the deposition, and that the topics were overly broad, irrelevant, and unduly burdensome.[8]  Based on HP Admin's objections regarding service of the Subpoena, on July 13, 2016, Companion took the deposition off the calendar.[9]

Despite HP Admin's repeated efforts to work with Companion, Companion has failed to substantively respond to the objections lodged by HP Admin concerning the scope of the subpoena.   Instead, Companion:   (1) has refused to, in any way, limit the scope of its subpoena;[10] (2) insists that HP Admin file this Motion;[11] (3) allegedly re-served the

---

[5] *See* Joint Discovery Plan of Counsel (App. 8).

[6] Service of the subpoena was improper.  *See, e.g.*, Letter from C. Dunham Biles to Kevin A. Hall, dated July 8, 2016 (App. 9); Letter from C. Dunham Biles to Kevin A. Hall, dated July 19, 2016 (App. 10).

[7] *See* Subpoena and Notice of Deposition to HP Admin, dated June 28, 2016 (App. 11).

[8] *See* Letter from C. Dunham Biles to Kevin A. Hall, dated July 8, 2016 (App. 9).

[9] *See* Letter from Kevin A. Hall to C. Dunham Biles, dated July 13, 2016 ("We understand that your client will not be appearing for deposition on July 21, 2016, and thus we have taken that date off the calendar.") (App. 12).

[10] *See, e.g.,* E-mail and correspondence from Texas Secretary of State from Kevin A. Hall to C. Dunham Biles, dated August 8, 2016 (App. 13).

[11] *See* E-mail from Kevin A. Hall to C. Dunham Biles, dated July 22, 2016 ("If your client is no longer disputing the validity of process that was served, please email me some dates/times that work for convening the deposition. If, on the other hand, your client contends that service of process has not been accomplished, please let me know that as well. In the case of the latter, we will look forward to receiving your motion for protective order.  Thanks.") (App. 14).

subpoena;[12] and (4) seeks to improperly require non-party HP Admin to prepare for, and attend, a deposition on September 7, 2016,[13] on twenty-three unwieldy topics.[14]   Incredibly, Companion insists on proceeding with the deposition before it even takes the depositions of all but one defendant.[15]

As Companion is well aware, HP Admin's only connection to the Lawsuit is that it, from 2010 forward (and not before), employed individuals who, on behalf of various Defendants, performed certain staffing services in furtherance of the companies' daily tasks.[16]   Accordingly, by definition, HP Admin cannot, and does not, possess any relevant information that is different or greater that what is possessed by Defendants on whose behalf the HP Admin employees were acting.[17]

In other words, Companion seeks HP Admin's deposition not because it wants to obtain:   (1) information it cannot otherwise obtain; or (2) HP Admin's testimony could be different than what has been, or will be, provided by Defendants (in these circumstances that would literally be impossible).   Instead, Companion seeks multiple bites at the same

---

[12] *See* E-mail and Correspondence from Texas Secretary of State from Kevin A. Hall to C. Dunham Biles, dated August 8, 2016 (App. 13).

[13] HP Admin objects to the date and location of the deposition. That issue appears, however, to be moot as HP Admin understands that Companion is taking the deposition off calendar. Further, Companion has previously agreed that if the deposition occurs, it will, consistent with Texas Practice, conduct the deposition at the offices of HP Admin's counsel. *See* letter from Kevin A. Hall to C. Dunham Biles, dated July 13, 2016 (App. 12).

[14] *See* Subpoena and Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15). *See* E-mail and Correspondence from Texas Secretary of State from Kevin A. Hall to C. Dunham Biles, dated August 8, 2016 (App. 13).

[15] *See* Joint Discovery Plan of Counsel (App. 8).

[16] *See* Declaration of Todd Trowbridge in Support of Non-party Highpoint Administrative Services, Inc.'s Motion to Quash, Motion for Protective Order, Request for Attorneys' Fees and Sanctions, and Brief in Support. ("Trowbridge Declaration") ¶ 4-5 (App. 16); AMS Hauger Depo at 52:13-16, 53:4-13, 55:17-23, 56:23, 57:19 (App. 17).

[17] *See* Trowbridge Declaration ¶ 12 (App. 16).

**NON-PARTY HIGHPOINT ADMINISTRATIVE SERVICES, INC.'S**
**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, REQUEST FOR**
**ATTORNEYS' FEES AND SANCTIONS, AND BRIEF IN SUPPORT**                    **PAGE 3**
4829-0841-1446.1

proverbial apple.  This is precisely the type of harassment, burden, and abuse that Federal

Rules of Civil Procedure 26 and 45 are intended to prevent.[18]

Accordingly, HP Admin requests that the Court:  (1) quash the subpoena and enter an

order protecting HP Admin from future subpoenas until after all Defendants are deposed and

Plaintiff demonstrates to this Court that the scope of the subpoena is proper; (2) award HP

Admin its attorneys' fees and expenses; and (3) impose sanctions against Companion and its

counsel to ensure their compliance with their discovery obligations.

## II.
## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Underlying Lawsuit And Parties.

In October 2015, Companion filed suit against Defendants.[19]  The Lawsuit appears to

have been initiated as part of a race to the courthouse as many of Companion's claims merely

seek declarations on Defendants' then yet to be filed counterclaims.[20]

### 1.    Plaintiff

Companion was a South Carolina-based insurance group selling property, casualty,

specialty and Workers' Compensation insurance products.[21]  It also provided fronting and

---

[18] *See* FED. R. CIV. P. 26 and 45; *see also Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) (holding witness should not be coerced to participate in litigation when testimony sought was available from other sources and actually presented by such sources); *Carroll v. Variety Children's Hosp.*, 2007 U.S. Dist. LEXIS 62214, *4 (E.D. Tex. Aug. 22, 2007) (holding multiple subpoenas that were virtually identical equated to improper, cumulative and duplicative discovery).

[19] *See* Complaint (App. 1).

[20] *Compare* Second Amended Complaint (App. 2), *with* First Amended Answer and Counterclaims (App. 3).

[21] *See Enstar Group Limited Completes Acquisition of Companion Property and Casualty Insurance Company, Enstar Group Limited*   (January 27, 2015), http://www.enstargroup.com/releasedetail.cfm?ReleaseID=893174; Roddie Burris, *Insurance Firm Opening U.S. Headquarters in Richland, The State* (October 19, 2015), http://www.thestate.com/news/business/article40289790.html (App. 18).

**NON-PARTY HIGHPOINT ADMINISTRATIVE SERVICES, INC.'S**
**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, REQUEST FOR**
**ATTORNEYS' FEES AND SANCTIONS, AND BRIEF IN SUPPORT**                              **PAGE 4**

third-party administrative services to its clients.[22]  Following a financial downturn, Enstar

Group Limited acquired Companion from BlueCross and BlueShield of South Carolina in

approximately January 2015 and renamed it Sussex Insurance Company.[23]

2. **Defendants**

Defendants AMS, Breckenridge, and AMS II are professional employer organizations

(the "PEO Defendants") that provided certain human resource outsourcing services to their

clients, such as employee benefits, payroll and workers' compensation, through employee

leasing arrangements.[24]  Defendant Highpoint is an insurance agency that assisted in

procuring insurance policies for the PEO Defendants and their clients.[25]  Defendant Aspen is

a third party claims administrator that handled certain insurance claims for the PEO

Defendants and and other insureds.[26]  Defendant Wood directly or indirectly owns the PEO

Defendants, Defendant Highpoint, and Defendant Aspen.[27]

3. **Non-Party HP Admin**

HP Admin was formed in 2010 and provides outsourced administrative services to

various clients, including employee management tasks such as employee benefits, payroll

and workers' compensation, as well premises management and supply of equipment.[28]  While

---

[22] *See id.*

[23] *See id.*

[24] *See* Second Amended Complaint ¶ 3 (App. 2).

[25]*See id.* at ¶ 21.

[26] *See* First Amended Answer and Counterclaims at ¶ 21 (App. 3).

[27] *See id.* at ¶ 22.

[28] *See* AMS Hauger Depo at 6:13-14, 23:6-17. (App. 17).

HP Admin provides services to some Defendants, it has other clients as well.[29]   Described more succinctly, in regard to the PEO Defendants and Highpoint, HP Admin has served as their staffing company from 2010 forward.[30]   HP Admin was the direct employer of the personnel that handled many of those companies' daily tasks.[31]   HP Admin had no direct relationship with Companion or the issues presented in the Lawsuit—it merely provided administrative services and employees to certain Defendants.[32]   Accordingly, HP Admin has no knowledge or information relevant to the Lawsuit that is separate or different from that which is in the possession, custody, or control of Defendants through those employees provided by HP Admin.[33]   Further, the logistics of how HP Admin provided Defendants employees is irrelevant to the issues in the Lawsuit.

### 4.        The Relationship Among Plaintiff And Defendants

Companion and the PEO Defendants allegedly entered into a contractual relationship whereby Companion offered insurance products to the PEO Defendants and their clients.[34] Numerous documents allegedly controlled this contractual relationship, including the Coverage Agreement and so-called Guaranty and Indemnity Agreement referenced in the Parties' live pleadings.[35]   As part of the contractual arrangement, some Defendants paid

---

[29] *See id.* at 7:18-22.

[30] *See* Trowbridge Declaration ¶ 5 (App. 16).

[31] *See id.*

[32] *See id.* at  ¶ 6.

[33] *See id.* at  ¶ 12.

[34] *See* Second Amended Complaint  ¶ 24 (App. 2).

[35] *See  id.*; First Amended Answer and Counterclaims  (App. 3).

insurance premium payments to Plaintiff, as well as payments of cash collateral to secure payment of claims made on the insurance policies issued by Companion.[36]

### 5.   The Claims Asserted

Although Companion has asserted fifteen claims (some of which have been stayed by the South Carolina court)[37] and the PEO Defendants have asserted six counterclaims, they can be succinctly summarized as follows:

(1)   is Companion improperly refusing to relinquish to the PEO Defendants cash collateral, and, if so, how much is owed to the PEO Defendants;[38]

(2)   has Companion over charged the PEO Defendants, and in what amount;[39]

(3)   do the parties owe each other accountings;[40] and

(4)   did Wood or Highpoint breach any alleged duties in connection with the issuance of certain Companion insurance policies.[41]

**B.   Plaintiff's Grossly Overbroad, Unduly Burdensome, And Otherwise Improper Subpoena To HP Admin—A Non-Party To The Lawsuit.**

On June 28, 2016, Companion issued[42] a subpoena and accompanying Notice of Deposition to HP Admin, seeking Rule 30(b)(6) corporate representative testimony on twenty-three subject matters of examination and purporting to unilaterally set the deposition

---

[36] *See* First Amended Answer and Counterclaims ¶ 224 (App. 3).

[37] *See* Opinion and Order on Motion for Clarification (App. 19).

[38] *See, e.g.,* Second Amended Complaint ¶ 48 (App. 2); First Amended Answer and Counterclaims ¶¶ 234, 238, 242 (App. 3).

[39] *See, e.g.,* Second Amended Complaint ¶ 55 (App. 2); First Amended Answer and Counterclaims ¶¶ 255, 263 (App. 3).

[40] *See, e.g.,* Second Amended Complaint ¶¶ 66-83 (App. 2); First Amended Answer and Counterclaims ¶¶ 245-248 (App. 3).

[41] *See, e.g.,* Second Amended Complaint ¶¶ 127-196 (App. 2).

[42] Whether service has been perfected is an outstanding issue, but not one with which HP Admin will use this Court's limited time to resolve.  After all, HP Admin has expressed its willingness to either voluntarily appear for deposition or have its counsel accept service if Companion would narrow the scope of the Subpoena.

for July 21, 2016.[43]   On July 27, 2016, Companion issued a second subpoena and accompanying Amended Notice of Deposition to HP Admin resetting the deposition for September 7, 2016.[44]   The two Subpoenas and Notices of Depositions are identical in all ways material to this Motion, including in regard to the topics contained within and are, therefore, referred to herein as the "Subpoena."[45]   The subject matters of the Subpoena include, but are not limited to, the transfer of any funds from any Defendant to HP Admin or by HP Admin to any Defendant from January 1, 2009 to the present.[46]

While the Subpoena does not formally seek production of documents, almost every subject matter included in the Notice of Deposition references a document or set of documents HP Admin would be required to locate, review, analyze and fully understand in the context of the Lawsuit —one to which it is not a party.[47]   Moreover, the majority of the subject matters, if not all, seek testimony that may be obtained from parties to the Lawsuit without burdening HP Admin.[48]   The Subpoena, however, would require HP Admin:  (1) to be deposed before all but one Defendant;[49] (2) to answer questions on twenty-two topics that relate to the actions of the parties, not to HP Admin's own conduct;[50] and (3) require HP Admin to spend at least fifty hours, if not one hundred hours, preparing for the deposition—time for which it will

---

[43] *See* Subpoena and Notice of Deposition to HP Admin, dated June 28, 2016 (App. 11).

[44] *See* Subpoena and Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15).

[45] *Compare* Subpoena and Notice of Deposition to HP Admin, dated June 28, 2016 (App. 11), *with* Subpoena and Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15).

[46] *See* Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15).

[47] *See id.*

[48] *See id.*

[49] *See* supra n. 5; Joint Discovery Plan of Counsel (App. 8).

[50] *See* Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15).

not be compensated.[51]   Indeed, Companion admits that it has served essentially identical corporate representative deposition notices on Defendants.[52]   In fact, of the twenty-three depositions topics only one, topic 6—the governance and ownership structure of HP Admin— actually relates directly to HP Admin and its business, as opposed to the actions of Defendants.[53] HP Admin's governance and ownership structure, however, is irrelevant to the claims asserted in the Lawsuit and, thus, not a proper subject of inquiry.

**C.**    **Plaintiff Ignores HP Admin's Diligent Efforts To Resolve Issues Related To The Subpoena, Plows Forward With Improper Discovery, And Forces HP Admin To Seek Judicial Intervention.**

Upon review of the Subpoena and accompanying documents, counsel for HP Admin determined that service was improper and, on its face, Companion's Subpoena was overly broad and otherwise improper.  HP Admin, therefore, immediately sent a letter to Companion outlining the deficiencies with the Subpoena.[54]

For five days, HP Admin heard nothing from Companion.  Finally on July 13, 2016, HP Admin received a letter from Plaintiff in which Companion:  (1) claimed to have served the Subpoena on July 12, 2016, through the Texas Secretary of State; (2) admitted that it had not tendered the required witness fee; and (3) did not address the substantive concerns raised

---

[51] *See* Trowbridge Declaration ¶¶ 8-15 (App. 16).

[52] *See* E-mail from Todd Carroll to C. Dunham Biles, dated July 28, 2016 ("Once we get beyond the service issue, we're glad to discuss the logistics of the deposition.  However, a federal judge in South Carolina just last week approved essentially the same scope of Rule 30(b)(6) topics on two of Mr. Wood's other entities, so we are not quite sure what's left to narrow down from the notice of Highpoint Administrative Services") (App. 23).

[53] *See* Amended Notice of Deposition to HP Admin, dated July 27, 2016 at Topic 6 (App. 15).

[54] *See* Letter from C. Dunham Biles to Kevin A. Hall, dated July 8, 2016 (App. 9).

by HP Admin in regard to the scope of the Subpoena (except through cursory and erroneous assertions).[55]

Disappointed in Plaintiff's recalcitrance, on July 19, 2016, HP Admin sent Companion a second letter reiterating that HP Admin was willing to work to schedule a deposition at a mutually agreeable time, if Plaintiff would work with HP Admin to properly narrow the scope of the Subpoena.[56]  HP Admin also reminded Plaintiff of its obligations under Rules 45(d)(1) and 26(b)(1) to limit the scope of discovery based on, among other things, proportionality, to forego engaging in duplicative and harassing discovery, and to take reasonable steps to avoid imposing an undue burden on a non-party such as HP Admin.[57]  Defiantly, Plaintiff replied *via* e-mail on July 22, 2016, instructing HP Admin to file a motion for protective order.[58]

Always the optimist, and believing rationale minds would prevail, on July, 22, 2016, HP Admin responded stating that, while it believes service to be improper, it is willing to forego service issues if Plaintiff would work with HP Admin to properly narrow the scope of the Subpoena.[59]  Having not received a response, on July 27, 2016, HP Admin again invited Plaintiff to call to attempt to resolve the issue.[60]

---

[55] *See* Letter from Kevin A. Hall to C. Dunham Biles, dated July 13, 2016 (App. 12).

[56] *See* Letter from C. Dunham Biles to Kevin A. Hall, dated July 19, 2016 (App. 10).

[57] *See id.*

[58] *See* E-mail from Kevin A. Hall to C. Dunham Biles, dated July 22, 2016 (App. 14).

[59] *See* E-mail from C. Dunham Biles to Kevin A. Hall, dated July 22, 2016 (App. 21).

[60] *See* E-mail from C. Dunham Biles to Kevin A. Hall, dated July 27, 2016 (App. 22).

Late on the afternoon of July 28, 2016, Plaintiff notified HP Admin that it was re-serving the Subpoena.[61]  Plaintiff also quixotically stated that only after service issues were resolved, would Companion discuss the logistics of the deposition, but were likely unwilling to narrow the scope of the Subpoena because the judge in South Carolina approved essentially the same scope of Rule 30(b)(6) topics on two of the Defendant entities.[62]  As HP Admin, however, has repeatedly informed Plaintiff, the scope of discovery in regard to parties and non-parties is not co-extensive.[63]

On July 29, 2016, therefore, HP Admin informed Companion that by its:  "own admission, the subpoena to HP Admin is duplicative of discovery obtained, or to be obtained, from parties to the Lawsuit.  You have thus established that the subpoena violates Rules 26 and 45."[64]  In fact, despite repeated requests, Companion has failed and refused to identify a single relevant topic on which it seeks information that it has not, and cannot, obtain from Defendants.   Accordingly, HP Admin demanded that Companion either withdraw the Subpoena or "confer on each topic and explain:  (1) why it is relevant and discoverable (*e.g.,* not privileged); and (2) why the information cannot be obtained from a party."[65]

A long-requested call between counsel finally occurred on August 1, 2016.[66] Companion, however, merely demanded that HP Admin appear for deposition in regard to all twenty-three topics, without offering any compromise.  In fact, Companion even refused to

---

[61] *See* E-mail from Todd Carroll to C. Dunham Biles, dated July 28, 2016 (App. 23).

[62] *See id.*

[63] *See, e.g.,* Correspondence from C. Dunham Biles to Companion's counsel, dated July 8, 19, 22, 29, 2016 (App. 9, 10, 21, 24).

[64] *See* E-mail from C. Dunham Biles to Todd Carroll and Kevin A. Hall, dated July 29, 2016 (App. 24).

[65] *Id.*

[66] *See, e.g.,* E-mail from C. Dunham Biles to Todd Carroll and Kevin A. Hall, dated August 1, 2016 (App. 25).

first depose Defendants and then discuss with HP Admin any information to which it believed it was entitled but unable to obtain from Defendants.  Plaintiff's counsel ended the call by stating that they would confer with Companion on how to proceed and would then revert.[67]   All too predictably, on August 8, 2016, Companion stated that it "intend[s] to proceed with the deposition on September 7, 2016 at 9:30 a.m." without any changes to the topics.[68]

This Motion is necessitated by the fact that Plaintiff has failed to engage in any productive communication about the scope of the Subpoenas, insisted that HP Admin, a non-party to the Lawsuit, accept without reservation the overbroad Subpoena improperly served on it and appear for a deposition on September 27, 2016, on twenty-three overbroad, unduly burdensome, irrelevant, and otherwise improper topics.[69]

### III.
### SUMMARY OF THE ARGUMENT

The Court should quash the Subpoena and enter a protective order because the Subpoena creates an undue burden on HP Admin—a non-party—under all of the factors considered by courts.

First, the information sought in the Subpoena constitutes cumulative and duplicative discovery that is available from another key source—namely, Defendants in Lawsuit, most of

---

[67] *See, e.g., id.*

[68] *See* E-mail from Kevin A. Hall to C. Dunham Biles, dated August 8, 2016 (App. 13).

[69] *See id.* ("We have re-reviewed the deposition topics in light of our conversation with you, and we believe that the topics are reasonable and appropriate areas of inquiry.  We intend to proceed with the deposition on September 7, 2016 at 9:30 AM as indicated in the notice, and we are making travel and court reporter arrangements accordingly. Does you client intend to appear in accordance with the subpoena or will you be filing a motion for protective order? Please advise and thanks.").  In light of the foregoing, on August 9, 2016, HP Admin informed Companion that it would file this Motion.  *See* E-mail from C. Dunham Biles to Kevin A. Hall and Todd Carroll, dated August 9, 2016 (App. 26).

whom have not been deposed.  Moreover, the Subpoena seeks testimony on topic areas that said Defendants have equal, if not superior, knowledge of than HP Admin.

Second, the other topics are facially overbroad and wholly unrelated to the underlying litigation.  As a result, the burden imposed on HP Admin in having to comply with the Subpoena greatly outweighs any fabricated benefit of testimony Plaintiff seeks from HP Admin that could be obtained from Defendants instead.

In addition, the Court should award HP Admin its attorneys' fees and costs incurred in regard to the Subpoena because despite HP Admin's repeated efforts to resolve this dispute, Plaintiff not only refused to engage in efforts to properly tailor the Subpoena to meet the requirements of Federal Rule of Civil Procedure 45(d)(1), but insisted that HP Admin seek this Court's intervention.

## IV.
## APPLICABLE LEGAL STANDARDS

### A.   Motion To Quash And For Protective Order.

Pursuant to Federal Rule of Civil Procedure 45(d)(3), the Court *must* quash the Subpoena and corresponding Notice of Deposition purportedly served on HP Admin by Plaintiff upon a finding that the subpoena and Notice of Deposition subject HP Admin to undue burden.[70]  To determine whether a subpoena creates an undue burden, the Court considers several factors, including the relevance and scope of the requested information; whether the information is actually needed by the requesting party; the time period covered by the request;

---

[70] *See* FED. R. CIV. P. 45(d)(3) (emphasis added) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . .  subjects a person to undue burden.").

and whether the requesting party has described the requested information with sufficient particularity.[71]

Federal Rule of Civil Procedure 26(b)(1) sets forth the standard for relevance and requires the Court to conduct a balancing test to determine whether the burden of the requested discovery outweighs its probable benefit.[72]  Further, if a subpoena is issued to a non-party, the Court may consider whether the witness will be subjected to expense and inconvenience in order to comply.[73]

Courts have also considered whether the requested information has already been obtained by a party to the litigation and, therefore, constitutes cumulative and duplicative discovery.[74]  In balancing the benefits and burdens of a subpoena, the Court must consider whether the information is actually unavailable or can be obtained from another source, such as a party to the litigation.[75]  Accordingly, if the information requested in a subpoena is virtually identical to

---

[71] *See Wiwa v. Royal Dutch Pet. Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (listing factors to consider in determining undue burden).

[72] *See Am. Fed'n of Musicians of the United States & Can. v. Skodam Films*, LLC, 313 F.R.D. 39, 44-45 (N.D. Tex. 2015) (citing FED. R. CIV. P. 26(b)(1)) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").

[73] *See id.*; *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) ("The status of a witness as a nonparty entitles the witness to consideration regarding expense and inconvenience.").

[74] *See Carroll v. Variety Children's Hosp.*, 2007 U.S. Dist. LEXIS 62214, *4 (E.D. Tex. Aug. 22, 2007) ("The issues for questioning in the… subpoena are virtually identical to those in the earlier subpoena to which [the non-party] submitted…. As such, the request is 'cumulative and duplicative.'").

[75] *See Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) ("This balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source.").

information sought in other subpoenas or can be obtained from another source, Courts have quashed subpoenas served on non-parties.[76]

Moreover, if a subpoena is overly broad on its face, the Court may find it presents an undue burden.[77]  Courts have held that a subpoena is facially overbroad if it fails to identify the requested information with particularity, fails to include a reasonable restriction on time, or fails to request information reasonably related to the central issues of the underlying action.[78]

In addition, pursuant to Federal Rule of Civil Procedure 26(c)(1), the Court, for good cause, may issue an order to protect any party or person from annoyance, embarrassment, oppression, or undue burden or expense.[79]  In support of a request for protective order, a moving party should demonstrate, through particular and specific facts, how the requested discovery is overly broad, burdensome, or oppressive.[80]  A moving party may establish the nature of the burden it seeks protection from through affidavits or other evidence.[81]

---

[76] *See, e.g., id.*; *Carroll*, 2007 U.S. Dist. LEXIS 62214 at *4.

[77] *See Wiwa v. Royal Dutch Pet. Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad."); *Williams*, 178 F.R.D. at 109.

[78] *See Am. Fed'n of Musicians of the United States & Can. v. Skodam Films*, LLC, 313 F.R.D. 39, 45 (N.D. Tex. 2015) ("Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests 'seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date'; '[t]he requests are not particularized'; and '[t]he period covered by the requests is unlimited.'") (internal citations omitted).

[79] *See* FED. R. CIV. P. 26(c)(1) ("[A]ny person from whom discovery is sought may move for a protective order… in the court for the district where the deposition will be taken [on matters relating to a deposition].").

[80] *See In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)) ("[T]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact."); *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005) (holding that the party opposing a discovery request has the initial burden of illustrating its overly broad, burdensome, or oppressive nature).

[81] *See In re Terra*, 134 F.3d at 306 (holding that allegations should be supported by affidavits or other evidence and not simply conclusory).

The Court is tasked with fairly weighing the competing needs and interests of the parties affected in the discovery, but has broad discretion in determining whether a protective order is justified.[82]   Ultimately, when a moving party demonstrates good cause and a need for protection, a protective order is warranted.[83]

## B.   <u>Awarding Attorneys' Fees And Sanctions.</u>

The Court may impose an appropriate sanction when a party issuing a subpoena fails to follow the mandate of Federal Rule of Civil Procedure 45(d)(1) to take reasonable steps to avoid the imposition of undue burden or expense on the party subject to the subpoena.[84] Appropriate sanctions include lost earnings and reasonable attorneys' fees.[85]   Additionally, Rule 26(c)(3) provides that sanctions should be awarded under Federal Rule of Civil Procedure 37(a)(5) when a party is granted a protective order upon proper motion.[86]

---

[82] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery."); *Areizaga v. ADW Corp.*, 2016 U.S. Dist. LEXIS 45494, *8, 314 F.R.D. 428 (N.D. Tex. 2016) (citing *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985) ("The Court has broad discretion in determining whether to grant a motion for a protective order.").

[83] *See Areizaga*, 2016 U.S. Dist. LEXIS 45494 at *8 ("A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection.").

[84] *See* FED. R. CIV. P. 45(d)(1). ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."); *see also Am. Fed'n of Musicians*, 313 F.R.D. at 43.

[85] *See id.*

[86] *See* FED. R. CIV. P. 26(c)(3) and 37(a)(5)   ("If [a] motion [for protective order] is granted… the court must…require the party… whose conduct necessitated the motion… to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

# V.
## ARGUMENTS AND AUTHORITIES

**A.**   **The Court Should Quash The Subpoena And Enter A Protective Order Because The Subpoena Seeks Cumulative And Duplicative Information And Is Overly Broad And Unduly Burdensome.**

The Court should quash the Subpoena and enter a protective order for at least two reasons: (1) the Subpoena seeks cumulative and duplicative information available from Defendants; and (2) the Subpoena topics are overly broad, unduly burdensome, irrelevant, and otherwise improper.[87]

**1.**   **The Court should quash the Subpoena because the Subpoena seeks cumulative and duplicative information available from other sources—namely, Defendants, most of whom have not been deposed.**

The Court should quash the Subpoena because, in violation of Federal Rules of Civil Procedure 26 and 45, the Subpoena requests cumulative and duplicative information that can be, and should be, sought from Defendants in the Lawsuit.[88]   In fact, the vast majority of the Subpoena topics to HP Admin are identical or substantially similar to the topics of information listed in deposition notices served on Defendants.[89]   Indeed, Plaintiff admits the topics are "essentially the same scope of Rule 30(b)(6) topics [served] on two [Defendants yet to be deposed]."[90]

Further, Plaintiff has already obtained, or will obtain, the requested information from parties to the Lawsuit.  For example, Defendant AMS was deposed on May 6, 2016, and the

---

[87] *See, e.g.,* HP Admin's Objection Chart (App. 27).

[88] *See* Subpoena and Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15).

[89] *See* Plaintiff's Second Amended Notice of Deposition of Defendant AMS Staff Leasing, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 4); Plaintiff's Amended Notice of Deposition of Defendant Highpoint Risk Services, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 5); Plaintiff's Amended Notice of Deposition of Defendant Aspen Administrators, Inc. pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 6); Amended Notice of Deposition of Charles David Wood, Jr. (App. 7); HP Admin's Objections Chart (App. 27).

[90] *See* E-mail from Todd Carroll to C. Dunham Biles, dated July 28, 2016 (App. 23).

deposition notice to AMS contained three topics of questioning identical to topics listed in the subpoena to HP Admin.[91]

More remarkably, while the depositions of Defendants Highpoint, Aspen, and Wood were originally scheduled for July 2016, Plaintiff decided to forego those depositions at that time.[92]   The depositions of those Defendants were then rescheduled for September 9 and 16, 2017, _after_ the date of the deposition Plaintiff seeks from HP Admin.[93]   Regardless of the fact that three Defendants in the underlying suit have yet to be deposed on identical topics, Plaintiff seeks to burden HP Admin and impose upon it significant expense, loss of time in conducting its business, and attorneys' fees, even though it is not a party to the Lawsuit.

In all, seventeen of the twenty-three topics requested in the Subpoena to HP Admin are substantially similar, if not identical, to the topics addressed in the deposition notices to Defendants AMS, Highpoint and Aspen.[94]   The remaining six topics request general information about the Lawsuit that Defendants have equal, if not more, knowledge of than HP Admin.[95]   Those topics include information regarding HP Admin's role in prosecuting and/or defending the underlying Lawsuit, including whether it has assisted Defendants in

---

[91] _See_ AMS Hauger Depo (App. 17); Plaintiff's Second Amended Notice of Deposition of Defendant AMS Staff Leasing, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 4); Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15); HP Admin's Objections Chart (App. 27).

[92] _See_ Plaintiff's Amended Notice of Deposition of Defendant Highpoint Risk Services, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 5); Plaintiff's Amended Notice of Deposition of Defendant Aspen Administrators, Inc. pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 6); Amended Notice of Deposition of Charles David Wood, Jr. (App. 7).

[93] _See_ Joint Discovery Plan of Counsel (App. 8).

[94] _Compare_ Plaintiff's Second Amended Notice of Deposition of Defendant AMS Staff Leasing, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 4) _with_ Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15); _see also_ HP Admin's Objections Chart (App. 27).

[95] _See_ Notice of Deposition to HP Admin, dated July 27, 2016 ¶¶ 2, 3, 4, 6, 19 and 20 (App. 15); _see also_ Objections Chart (App. 27).

**NON-PARTY HIGHPOINT ADMINISTRATIVE SERVICES, INC.'S**
**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, REQUEST FOR**
**ATTORNEYS' FEES AND SANCTIONS, AND BRIEF IN SUPPORT**                    **PAGE 18**
4829-0841-1446.1

responding to discovery requests.[96]   HP Admin cannot provide any different testimony than Defendants.[97]

In fact, HP Admin's knowledge of those topics would be substantially limited as compared to Defendants because HP Admin is not privy to the considerations of Defendants and their counsel in prosecuting and/or defending the underlying Lawsuit.  As a result, any testimony given by HP Admin would necessarily be duplicative of the testimony of Defendants.[98]   The Subpoena, therefore, constitutes cumulative and duplicative discovery meant only to burden and harass HP Admin.

Accordingly, the Subpoena to HP Admin should be quashed.[99]   Indeed, Courts have quashed subpoenas served on non-parties when, as here, the information requested in a subpoena is virtually identical to information sought in other subpoenas or deposition notices or can be obtained from another source.[100]   It is particularly egregious that Plaintiff seeks to burden HP Admin with such improper discovery when only one of six Defendants has been deposed.[101]   The Court should, therefore, grant HP Admin's Motion because the Subpoena seeks cumulative and duplicative information available from other sources.

---

[96] *See id.*

[97] *See* Trowbridge Declaration ¶ 12 (App. 16).

[98] *See id.* at ¶ 13.

[99] *See* FED. R. CIV. P. 45(d)(3) (emphasis added) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . .  subjects a person to undue burden."); *Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004); *Carroll v. Variety Children's Hosp.*, 2007 U.S. Dist. LEXIS 62214, *4 (E.D. Tex. Aug. 22, 2007).

[100] *See, e.g., Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004) ("This balance of the subpoena's benefits and burdens calls upon the court to consider whether the information is necessary and unavailable from any other source."); *Carroll*, 2007 U.S. Dist. LEXIS 62214 at *4.

[101] *See supra* n. 3-5.

**NON-PARTY HIGHPOINT ADMINISTRATIVE SERVICES, INC.'S**
**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, REQUEST FOR**
**ATTORNEYS' FEES AND SANCTIONS, AND BRIEF IN SUPPORT**                    **PAGE 19**
4829-0841-1446.1

**2.**      **The Court should quash the Subpoena because the topics listed in the Subpoena are grossly overly broad, unduly burdensome, irrelevant, and otherwise improper.**

The Court should quash the Subpoena because the burden that would be imposed on HP Admin outweighs any probable benefit that could result from HP Admin providing deposition testimony in the Lawsuit, especially considering the expense and inconvenience HP Admin would be subjected to as a non-party.[102]   In fact, there is no benefit to deposing HP Admin over any of the Defendants because every one of the twenty-three topics contained in the subpoena to HP Admin is either addressed in deposition notice to a Defendant, covers an area Defendants have equal, if not more, knowledge of than HP Admin, or is wholly irrelevant.[103]

In particular, only Topic 6 of the Subpoena is tailored to obtain information specific to HP Admin.[104]   Information regarding the corporate governance structure of HP Admin, however, is immaterial to the claims and defenses in the underlying Lawsuit.   The Subpoena, therefore, is only meant to burden and harass HP Admin and afford Plaintiff an opportunity to conduct an improper fishing expedition into HP Admin's private business.    There is no basis for Companion's intrusion into the ownership and corporate governance of HP Admin.

---

[102] *See Am. Fed'n of Musicians of the United States & Can. v. Skodam Films*, LLC, 313 F.R.D. 39, 44-45 (N.D. Tex. 2015) (citing FED. R. CIV. P. 26(b)(1)) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."); *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) ("The status of a witness as a nonparty entitles the witness to consideration regarding expense and inconvenience.").

[103] *See* Plaintiff's Second Amended Notice of Deposition of Defendant AMS Staff Leasing, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 4); Plaintiff's Amended Notice of Deposition of Defendant Highpoint Risk Services, LLC pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 5); Plaintiff's Amended Notice of Deposition of Defendant Aspen Administrators, Inc. pursuant to Federal Rule of Civil Procedure 30(b)(6) (App. 6); Amended Notice of Deposition of Charles David Wood, Jr. (App. 7); Amended Notice of Deposition to HP Admin, dated July 27, 2016 (App. 15); HP Admin's Objections Chart (App. 27).

[104] *See* Amended Notice of Deposition to HP Admin, dated July 27, 2016 ¶ 6 (App. 15).

In addition to the majority of the topics being identical to topics of information requested from the Defendants, many of the topics are facially overbroad because they are not particularized, fail to include a reasonable restriction on time, and fail to request information reasonably related to the central issues of the underlying action.[105]

For example, Topic 1 requests information regarding every written contract or agreement HP Admin or <u>any of its employees</u> have entered into with any of the Defendants or <u>any other third parties</u> related to underlying Lawsuit for the past ten years.[106]  HP Admin has provided a variety of administrative services to Defendants.[107]

Additionally, Topic 19 requests information regarding:

The use of HP Admin funds to satisfy any debts and/or other financial obligations of Defendants, or to receive monies belonging to any Defendant.[108]

Topic 20 requests information regarding:

HP Admin's role in the insurance program business relationship between the parties in this litigation, including the identification of HP Admin employees who have been involved and a description of their involvement.[109]

Compliance with such overly broad topics as Topics 1, 19, and 20, would result in HP Admin having to research all aspects of every service it provided to every Defendant since the inception of its relationships with each Defendant, regardless of whether such service is

---

[105] *See Am. Fed'n of Musicians*, 313 F.R.D. at 45 ("Courts have found that a subpoena for documents from a non-party is facially overbroad where the subpoena's document requests 'seek all documents concerning the parties to [the underlying] action, regardless of whether those documents relate to that action and regardless of date'; '[t]he requests are not particularized'; and '[t]he period covered by the requests is unlimited.') (internal citations omitted).

[106] *See* Amended Notice of Deposition to HP Admin, dated July 27, 2016 ¶ 1 (App. 15).

[107] *See* Trowbridge Declaration ¶ 3-4 (App. 16).

[108] *See* Amended Notice of Deposition to HP Admin, dated July 27, 2016 ¶ 19 (App. 15).

[109] *See id.* at ¶ 20.

related to the parties' claims in the Lawsuit.   Moreover, it also improperly invades HP

Admin's business activities unrelated to the Lawsuit.

Topic 12 provides another example of the burdensome nature Companion's requests,

in that it requests information regarding:

> HP Admin's knowledge of and/or involvement in the negotiation of the 2006
> Coverage Agreement, the 2006 Third Party Claims Administration Agreement,
> and the 2006 Guaranty and Indemnity Agreement, including:
>
> a.   when the agreements were executed;
>
> b.   the individuals involved in the negotiation of the agreements;
>
> c.   any communications concerning whether policies other than
> policies issued to AMS were governed, or supposed to be
> governed, by the 2006 Coverage Agreement;
>
> d.   the policies and lines of business covered by the 2006 Coverage
> Agreement; and
>
> e.   any amendment, modification or termination of the 2006 Coverage
> Agreement, or any part thereof or exhibit thereto.

As an initial matter, HP Admin was not a party to the 2006 Coverage Agreement.

Indeed, it was not even in existence in 2006.   Topics such as Topic 12, therefore, illustrate

Companion's true motive for seeking HP Admin's deposition—not to obtain information

otherwise unattainable, but to get as much deposition time as possible, full well knowing that

HP Admin cannot provide any different or better testimony than Defendants.

Thus, with respect to the expense and inconvenience placed on HP Admin, in order for

HP Admin to comply with the Subpoena, it will be required to identify one or more

representatives to undertake extensive and unduly burdensome efforts to research files and

documents and carefully consider the topics of testimony.[110]  The time required to undertake this research will likely exceed fifty hours, if not closer to one hundred hours.[111]  This is time that HP Admin will not be compensated for because any preparation time spent by any HP  Admin employee will be time that employee will be required to expend outside of his or her standard employment duties and obligations to other HP Admin clients.[112]

Moreover, as a result of the Subpoena, HP Admin has been forced to retain counsel to advise of its rights with respect to compliance with the Subpoena.[113]  Should HP Admin be required to comply with the Subpoena and attend a Rule 30(b)(6) deposition, it will incur significant expense, loss of time in conducting its business, and attorneys' fees, even though it is not a party to the Lawsuit and numerous Defendants have yet to be deposed.[114]

Under all of the factors considered by Courts in determining whether a Subpoena imposes an undue burden on a non-party, the benefit of requiring HP Admin to comply with the Subpoena served on it by Plaintiff in this matter does not outweigh the burden place on it by such overly broad, burdensome, and irrelevant discovery.  Accordingly, the Court should quash the Subpoena.[115]

---

[110] *See* Trowbridge Declaration ¶ 10 (App. 16).

[111] *See id.* at ¶ 11.

[112] *See id.*

[113] *See id.* at ¶ 14.

[114] *See id.* at ¶ 15.

[115] *See* Fed. R. Civ. P. 45(d)(3); *see also Positive Black Talk, Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 377 (5th Cir. 2004); *Carroll v. Variety Children's Hosp.*, 2007 U.S. Dist. LEXIS 62214, *4 (E.D. Tex. Aug. 22, 2007).

**B.**    **The Court Should Award HP Admin Its Attorneys' Fees And Costs and Enter Appropriate Sanctions To Ensure Companion's Compliance With Its Discovery Obligations.**

Plaintiff has an unequivocal duty to take reasonable steps to avoid imposing a duty on HP Admin, a non-party, regardless of its subjective misplaced perceptions of HP Admin's relationship to the underlying litigation.[116]   Companion has repeatedly refused to tailor the scope of the Subpoena to comply with its obligations.   Instead, it:   (1) denies that it has such a duty;[117]   (2) admits that it has and will obtain identical information from the parties to the Litigation;[118] and (3) nonetheless has forced HP Admin to file this Motion to protect itself from discovery abuse.[119]   Plaintiff's flaunting of its obligations and recalcitrance has needlessly wasted the time and resource of this Court[120]and HP Admin.   Accordingly, HP Admin requests that the Court award HP Admin its attorneys' fees and expenses incurred through the filing of its reply in support of this Motion or through the hearing on this Motion (if a hearing is held);[121] and (3) enter appropriate sanctions to ensure Companion's and its counsels' compliance with their discovery obligations.

---

[116] *See* FED. R. CIV. P. 26(b)(1) and 45(d)(1); *see* also *Dondi Properties Corp. v. Commerce Sav. & Loan Assoc.*, 121 F.R.D. 284, 288 (N.D. Tex 1988) (adopting the following as a standard:   "A lawyer should not use any form of discovery, or the scheduling of discovery, as a means of harassing opposing counsel or counsel's client"); *id.* at 289 ("Local Rule 5.1(a) implicitly recognizes that in general the rules dealing with discovery in federal cases are to be self-executing").

[117] *See, e.g.,*  Letter from Kevin A. Hall to C. Dunham Biles, dated July 13, 2016 (App. 12).

[118] *See* E-mail from Todd Carroll to C. Dunham Biles, dated July 28, 2016 (App. 23).

[119] *See, e.g.,* E-mail from Kevin A. Hall to C. Dunham Biles, dated August 8, 2016 (App. 13).

[120] *See Dondi,* 121 F.R.D. at 285 ("With alarming frequency, we find that valuable judicial and attorney time is consumed in resolving unnecessary contention and sharp practices between lawyers.  Judges and magistrates of this court are required to devote substantial attention to refereeing abusive litigation tactics that range from benign incivility to outright obstruction.  Our system of justice can ill-afford to devote scarce resources to supervising matters that do not advance the resolution of the merits of a case; nor can justice long remain available to deserving litigants if the costs of litigation are fueled unnecessarily to the point of being prohibitive").

[121] If HP Admin is awarded attorneys' fees and costs, it will, within fourteen days, submit appropriate evidence.

**VI.**
**CONCLUSION**

For all the foregoing reasons, HP Admin requests that the Court:   (1) grant the

Motion; (2) quash the Subpoena; (3) enter a Protective Order protecting HP Admin from the

Subpoena and Notice of Deposition HP Admin, as well as from future subpoenas until and

after all Defendants are deposed and Plaintiff demonstrates to this Court that the scope of the

subpoena is proper; (4) award HP Admin its attorneys' fees and expenses incurred in regard

to the Subpoena; and (5) issue appropriate sanctions to ensure Companion and its counsels'

compliance with their discovery obligations.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

By: /s/ *C. Dunham Biles*
    C. Dunham Biles
    Texas Bar No. 24042407
    Katie M. Ackels
    Texas Bar No. 24078948
    2100 Ross Avenue, Suite 2000
    Dallas, Texas 75201
    Telephone: (214) 722-7100
    Facsimile: (214) 722-7111
    Dunham.Biles@lewisbrisbois.com
    Katie.Ackels@lewisbrisbois.com

**ATTORNEYS FOR HIGHPOINT**
**ADMINISTRATIVE SERVICES, INC.**

## <u>CERTIFICATE OF CONFERENCE</u>

Counsel for HP Admin has conferred with counsel for Companion Property and Casualty Insurance Company ("Companion" or "Plaintiff") in a good faith attempt to resolve the issues raised herein.  In those conferences, HP Admin agreed to work with Plaintiff to identify a mutually agreeable date and location for the deposition, if Companion would work with HP Admin to properly narrow the scope of the requested deposition.  On August 8, 2016, however, Companion's counsel notified counsel for HP Admin that Plaintiff would not agree to reduce the scope of the subpoena and intends to proceed with the deposition on September 7, 2016, unless HP Admin files this Motion.  HP Admin, therefore, files this Motion.

/s/ *C. Dunham Biles*_____
C. Dunham Biles

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 11, 2016, I filed a copy of the foregoing *via* the Court's electronic filing system.  Notice of this filing and a copy of the Motion was served on August 11, 2016, by first class mail and e-mail, to:

**Richard C. Detwiler**
**Louis H Lang**
CALLISON TIGHE AND ROBINSON, LLC
P.O. Box 1390
Columbia, SC 29202-1390
Email: rickdetwiler@ctrlawfirm.com
louislang@callisontighe.com

**Michael S. Gardner**
**Eric P. Haas**
GARDNER HAAS PLLC
2828 Routh Street, Suite 660
Dallas, TX 75201
Email: mg@gardnerhaas.com
Email: eh@gardnerhaas.com

**ATTORNEYS FOR DEFENDANTS AND COUNTERCLAIM-PLAINTIFFS**

**Kevin A. Hall**
**M. Todd Carroll**
Womble Carlyle Sandridge & Rice, LLP
1727 Hampton Street
Columbia, South Carolina 29201
Email: kevin.hall@wcsr.com
Email: todd.carroll@wcsr.com

**Harry Lee**
**Conor Phillip Brady**
Steptoe & Johnson LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Email: hlee@steptoe.com
Email: cbrady@steptoe.com

**ATTORNEYS FOR PLAINTIFF AND COUNTERCLAIM-DEFENDANT**

/s/ *C. Dunham Biles*_____
C. Dunham Biles

**NON-PARTY HIGHPOINT ADMINISTRATIVE SERVICES, INC.'S**
**MOTION TO QUASH, MOTION FOR PROTECTIVE ORDER, REQUEST FOR**
**ATTORNEYS' FEES AND SANCTIONS, AND BRIEF IN SUPPORT**                    **PAGE 27**
4829-0841-1446.1