IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company, | ) ) ) | Misc. No. 3:16-mc-00075-D-BF |
| | ) | In re: No. 3:14-cv-03719-CMC (D.S.C.) |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| Charles David Wood, Jr., et al., | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM IN OPPOSITION TO HIGHPOINT ADMINISTRATIVE SERVICE'S AMENDED MOTION TO QUASH

MUNSCH HARDT KOPF & HARR, P.C.

D. Ronald Reneker
Texas Bar No. 16770000
*rreneker@munsch.com*
Michael C. Lee
Texas Bar No. 24051735
*mlee@munsch.com*
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
214-855-7500

Attorneys for Companion Property and Casualty Insurance Company

August 24, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.    Litigation in South Carolina .......................................................................................... 2

    II.   Discovery Efforts in Texas ............................................................................................ 4

    III.  Timing of Deposition ..................................................................................................... 7

STANDARD OF REVIEW ....................................................................................................... 7

ARGUMENTS AND AUTHORITIES ...................................................................................... 8

    I.    The deposition topics are narrowly drawn to address core issues of the underlying litigation: the commingling of resources and money among Mr. Wood's various companies, how responsibilities were carried out under contracts with Companion, and why HP Admin is providing virtually all of the litigation support for Mr. Wood's companies. ...................................................................................................................... 9

    II.   Because Companion seeks information unique to HP Admin or within HP Admin's knowledge, this testimony will not be duplicative ....................................................... 14

    III.  HP Admin personnel are already intimately familiar with the facts, claims, and defenses of the underlying case. ................................................................................................. 15

CONCLUSION ....................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Celanese Corp. v. Clariant Corp.*, Case No. 3:14-cv-4165-M, 2016 U.S. Dist. LEXIS 35124
    (N.D. Tex. Mar. 18, 2016) ............................................................................................ 8, 15, 17

*In re Motor Fuel Temperature Sales Practices Litig.*, Case No. 07-MD-1840-KHV, 2009 U.S.
    Dist. LEXIS 118705 (D. Kan. Dec. 16, 2009) ........................................................................ 14

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482 (5th Cir. 1990) ................. 9

*Williams v. City of Dallas*, 178 F.R.D. 103 (N.D. Tex. 1998) ......................................................... 7

*Wiwa v. Royal Dutch Petoleum Co.*, 392 F.3d 812 (5th Cir. 2004) ................................................. 8

**Rules**

Fed. R. Civ. P. 26(b)(1) ..................................................................................................................... 8

Fed. R. Civ. P. 45 .............................................................................................................................. 7

## **INTRODUCTION**

In its 25-page amended motion to quash, Highpoint Administrative Services ("HP Admin") goes to great lengths to portray itself as somehow wholly detached from the underlying litigation pending in the United States District Court for the District of South Carolina between Companion Property and Casualty Insurance Company ("Companion"), on the one hand, and Charles David Wood, Jr. ("Mr. Wood") and several of his interrelated insurance entities (together with Mr. Wood, the "Wood Defendants), on the other (the "South Carolina Action"). Contrary to its suggestions, however, HP Admin possesses highly relevant information concerning the claims and defenses in the South Carolina Action and, in fact, has been heavily involved in the case since its inception. To date, with a single exception, HP Admin employees have provided all sworn testimony on behalf of the Wood Defendants. This is not surprising, as Mr. Wood formed HP Admin and is its registered agent, and the company appears to be nothing more than an interrelated spin-off of the named Wood Defendant entities in the South Carolina Action, each of which is wholly owned and controlled by Mr. Wood.

Despite its heavy participation in the South Carolina Action, HP Admin has refused to appear for a routine Rule 30(b)(6) deposition, through which Companion seeks to learn basic information regarding HP Admin's involvement in a tangled web of fraudulent conduct by the Wood Defendants that has caused tens of millions of dollars in damages to Companion. It has ducked service of the subpoena, it has feigned ignorance of the claims pending in the South Carolina Action, and now it has engaged this Court to quash a deposition notice that is entirely consistent with the Federal Rules of Civil Procedure. The Court should not credit HP Admin's posturing, and it should fully enforce Companion's subpoena.

## BACKGROUND

I.     **Litigation in South Carolina**

The issue pending before this Court is not the extreme, burdensome, over-the-top situation presented in HP Admin's motion to quash. Simply put, Companion served a routine Rule 30(b)(6) subpoena on HP Admin to learn about that company's involvement and role within a network of companies owned or controlled by Mr. Wood.

Mr. Wood and five of his companies are named defendants in the South Carolina Action. The essence of that case is that Mr. Wood and his entities entered into an insurance "fronting" arrangement with Companion whereby (1) the Wood Defendants would issue, adjust, and perform all administrative tasks associated with insurance policies written on Companion "paper," or insurance policy forms; (2) they would pay Companion a small fronting fee for allowing them to write insurance on Companion's A-rated paper; (3) they would post sufficient collateral to ensure Companion had no exposure under the policies; and (4) Mr. Wood executed a comprehensive guaranty and indemnity agreement that personally assured performance and payment of all of his companies' obligations.

Along the way, however, Mr. Wood and his companies engaged in fraudulent and deceptive practices that resulted in tens of millions of dollars of damages to Companion, exposed Companion to policy claims and regulatory proceedings, and commingled resources and assets in such a manner as to render their misconduct barely traceable. Companion has outlined this misconduct and asserted fifteen causes of action in South Carolina to remedy these myriad wrongs. (App. 0018–0058 (Dkt. No. 4).)

Discovery in the South Carolina Action has revealed that HP Admin—a company Mr. Wood formed and for which he serves as the registered agent, and for which his daughter serves

as president (Comp. App. 001–005)—was involved in this scheme. Discovery has also revealed that HP Admin has been assisting the Wood Defendants in defending the claims brought by Companion and in prosecuting the Wood Defendants' counterclaims against Companion. When Companion attempted to inquire about HP Admin's involvement during a routine Rule 30(b)(6) deposition of one of the Wood Defendants—namely, AMS Staff Leasing ("AMS")—counsel for the Wood Defendants objected on grounds that such questions were impermissible and instructed the witnesses—who are currently employees of HP Admin, not AMS—not to answer. (Excerpts from Transcript of AMS Staff Leasing Deposition (Comp. App. 012–016, 083–087).)

Since 2010, both of AMS's Rule 30(b)(6) designees, Kristin Wynn and Jennifer Hauger, have been working for HP Admin, not AMS. While at HP Admin, Ms. Wynn has continued to perform accounting and other services for AMS and Mr. Wood and has served as AMS's Controller (Comp. App. 012); she has been the author and recipient of countless emails to and from Companion, using an HP Admin email address, that are highly relevant to the claims and defenses in the South Carolina Action (*e.g.*, Comp. App. 017–018); she has been gathering documents and information at HP Admin relevant to the South Carolina Action to assist the Wood Defendants in the case (Comp. App. 009); and she has personally prepared key documents that Defendants' counsel produced to Companion as if they were documents created by the Wood Defendants in the ordinary course (Comp. App. 010). In light of this suspicious and intertwined background, HP Admin's conduct and knowledge of the claims and defenses in the South Carolina Action is highly relevant, but the Wood Defendants' counsel instructed AMS's designees not to answer questions about HP Admin.

Following the Rule 30(b)(6) deposition of AMS, the court in South Carolina held that Companion could only question those witnesses on the topics noticed for that deposition, but

explained that its ruling "does not preclude discovery on this topic [*i.e.* HP Admin's involvement with Mr. Wood and his other companies], if otherwise relevant, through other means." (Order on Motion for Protective Order at 5 (Dkt. No. 125 in *Companion Prop. & Cas. Ins. Co. v. Wood,* Case No. 3:14-cv-3719-CMC (D.S.C.) (Comp. App. 023).)  The deposition subpoena HP Amin seeks to quash here is the "other means" suggested by the South Carolina court.

## II.   Discovery Efforts in Texas

Indeed, following receipt of the South Carolina court's instructions to conduct discovery of HP Admin through "other means," on June 28, 2016, Companion sent a deposition subpoena to HP Admin. Companion copied counsel for the Wood Defendants on the service letter and requested that they accept service, given that Mr. Wood is HP Admin's registered agent, and the Wood Defendants' counsel represented HP Admin employees during the Rule 30(b)(6) deposition of AMS and instructed the employees not to answer questions about HP Admin. Counsel for the Wood Defendants refused to accept service for Mr. Wood, and so Companion was forced to attempt to personally serve the company.

Companion enlisted a process server who made numerous attempts to serve Mr. Wood (as HP Admin's registered agent) or Amanda Wood (his daughter and president of HP Admin). (*See* Aff. Richard Euler (July 6, 2016) (detailing five trips to Mr. Wood's home and to HP Admin's offices attempting to serve the subpoena) (Comp. App. 026–028).) Once those efforts proved unsuccessful, Companion sought assistance from the Texas Secretary of State, who served HP Admin with the subpoena. (Certificate of Service of Subpoena from the Texas Secretary of State (July 12, 2016) (Comp. App. 030).)

In the meantime, unbeknownst to Companion, HP Admin had actually received the subpoena. On July 8, 2016, HP Admin's counsel wrote a letter to Companion in which HP

Admin disputed that it had been served with any subpoena, suggested that its employees did not have the first clue about anything related to the litigation in South Carolina, and expressly stated in multiple places that HP Admin refused to participate in the noticed deposition. (App. 0131–0133 (Dkt. No. 4).)

Following that letter, counsel for Companion exchanged voicemails, letters, and emails with counsel for HP Admin regarding the subpoena and the deposition. Throughout those exchanges, HP Admin postured that it would waive any objection to service in exchange for Companion narrowing the scope of its subpoena. When pressed on the point, though—*i.e.*, what HP Admin believed to be objectionable—HP Admin made clear that no amount discovery from it would be appropriate because, in its view, Companion can and should get all the discovery it needs from Mr. Wood's other companies.[1] Of course, this hardly solved the problem, as Mr. Wood's other companies had already objected to providing discoverable information about HP Admin, and the court in South Carolina had effectively instructed Companion to seek discovery directly from HP Admin. Simply put, Companion cannot learn what information HP Admin has on the critical issues noticed in the subpoena without deposing HP Admin on these issues.

On July 18, 2016, the court in South Carolina issued a text order (Comp. App. 031), in which it approved of the scope of topics for Rule 30(b)(6) depositions of two of Mr. Wood's other companies that approximated the scope of topics on which Companion seeks to depose HP Admin. Given that favorable ruling, and recognizing that discussions with HP Admin about the subpoena had become illusory—indeed, HP Admin believes Companion is not entitled to obtain any discovery from HP Admin—Companion set out to re-serve the subpoena with a new deposition date of September 7, 2016.

---

[1]   HP Admin's objection to any deposition proceeding at all is confirmed by its "Objections Chart," which interposes an objection to every topic noticed. (App. 0209–0215 (Dkt. No. 4).)

Once again, personal service proved impossible. Companion's process server made eight more unsuccessful attempts at serving HP Admin's registered agent (Mr. Wood) or president (Amanda Wood). (Aff. Richard Euler (Aug. 1, 2016) (Comp. App. 035–037).) Just as before, Companion was forced to go to the Texas Secretary of State to effectuate service. (App. 0154 (Dkt. No. 4).)[2]

On August 8, 2016, counsel for Companion inquired as to whether HP Admin would appear for its deposition as re-noticed. The next day, counsel for HP Admin responded with a single sentence, which appears to have been redacted from Page 0151 of the Appendix: "This week, HP Admin will file its motion to quash, motion for protective order, request for attorneys' fees and sanctions and brief in support." (Email Correspondence from Counsel for HP Admin (Aug. 9, 2016) (Comp. App. 038).)

The instant motion—25 pages long, with 121 footnotes and a 219-page appendix— followed. Lost in the histrionics of HP Admin's motion are the simple facts that this company is indisputably part of the web that Mr. Wood's companies have woven; its employees have already provided documents, numerous sworn statements, and live testimony on behalf of the Wood Defendants while concurrently refusing to discuss HP Admin's own role and involvement in the South Carolina Action; and the court in South Carolina essentially instructed Companion to seek discovery from HP Admin on the subject matters of the underlying litigation.

Against this backdrop, the Court should readily deny HP Admin's requested relief and order it to appear on September 7, 2016, to provide testimony regarding its role in Mr. Wood's scheme, as noticed in Companion's subpoena and accompanying Rule 30(b)(6) topics.

---

[2] Despite all of its prior posturing on the issue, HP Admin has now conceded service was proper. (HP Admin's Am. Mot. at 7 n.42 (Dkt. No. 3).)

### III.    Timing of Deposition

Discovery has closed in the South Carolina Action, save for a series of depositions, including the deposition of HP Admin, that the court has authorized to take place through September 14, 2016. (Scheduling Order (Dkt. No. 164-1 in the Underlying Case) (Comp. App. 042).) Thus, this deposition is one of the few remaining discovery tasks pending in that case. Respectfully, Companion requests that the Court deny this motion—which Companion believes was interposed for delay and to obstruct Companion from obtaining a clear picture of Mr. Wood's fraudulent scheme—as expeditiously as possible in order to permit the parties to stay in compliance with the South Carolina scheduling order.

### <u>STANDARD OF REVIEW</u>

An entity's status as a nonparty does not immunize it from discovery. Rule 45 specifically authorizes litigants to seek discovery from nonparties on matters related to the underlying litigation. *See* Fed. R. Civ. P. 45 advisory committee's note (2013) ("Subpoenas are essential to obtain discovery from nonparties."). The rule contains several safeguards to prevent abuse of nonparties, but HP Admin has only referenced one of those, which is inapplicable here.

As the party opposing the subpoena, HP Admin bears the "heavy burden" of demonstrating that the subpoena is overly broad or that compliance with the subpoena would be unduly burdensome and oppressive. *Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (quoting *Barnes Found. v. Township of Lower Merion*, Case No. 96-372, 1997 U.S. Dist. LEXIS 4444, at *16 (E.D. Pa. Apr. 7, 1997)).

While the Court should account for the nonparty's inconvenience when enforcing a subpoena, Rule 26's standards for discovery should predominate the analysis. *Celanese Corp. v.*

*Clariant Corp.*, Case No. 3:14-cv-4165-M, 2016 U.S. Dist. LEXIS 35124, at *6–7 (N.D. Tex.

Mar. 18, 2016). That is, Companion is entitled to

> discovery regarding any nonprivileged matter that is relevant to any
> party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount
> in controversy, the parties' relative access to the relevant information, the
> parties' resources, the importance of the discovery in resolving the issues,
> and whether the burden or expense of the proposed discovery outweighs
> its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also, e.g.*, *Celeanese Corp.*, 2016 U.S. Dist. LEXIS 35124, at *10–

13 (refusing to quash a subpoena because of the wide scope of discovery provided by Rule 26).

If the Court believes that any aspect of Companion's subpoena is overly broad—a point

with which Companion strongly disagrees—the Court should modify the subpoena consistent

with the Court's views of the boundaries of discovery, rather than quashing it altogether. *See,*

*e.g.*, *Wiwa v. Royal Dutch Petoleum Co.*, 392 F.3d 812, 818–22 (5th Cir. 2004) (reversing a

district court's decision to quash a subpoena as an abuse of discretion and modifying the

subpoena to bring it within an appropriate scope, while noting that "modification of a subpoena

is preferable to quashing it outright").

## ARGUMENTS AND AUTHORITIES

Despite the length of HP Admin's motion, its objections to Companion's subpoena

amount to little more than familiar boilerplate. HP Admin claims that the deposition topics

(1) are overly broad and unrelated to the underlying litigation, (2) duplicate other discovery, and

(3) pose an undue burden.[3] These objections are easily rebutted by the record of this case.

---

[3]   In a few instances, HP Admin argues that a deposition topic could touch on issues covered by
the attorney-client privilege or the work product doctrine. (App. 0209, 0210, 0215 (Dkt. No. 4).)
Companion disagrees, but in any event, such objections can be made in response to specific
questions; these doctrines do not provide a legitimate objection to whole topics.

I.     **The deposition topics are narrowly drawn to address core issues of the underlying litigation: the commingling of resources and money among Mr. Wood's various companies, how responsibilities were carried out under contracts with Companion, and why HP Admin is providing virtually all of the litigation support for Mr. Wood's companies.**

According to its "Objections Chart," HP Admin objects to the following deposition topics on grounds that they are overly broad: Topics 1, 2, 3, 4, 5, 6, 7, 12, 13, 14, 17, 18, 19, 20, 22, and 23. (App. 0209–0215 (Dkt. No. 4).) In each instance, it argues that these topics are "not particularized," or that they are "not reasonably related to the central issues of the underlying action," or that they "improperly invade" HP Admin's business activities.

These objections are empty and are precisely the types of rote, mechanical objections that courts have come to recognize as obstructing efficiency in the discovery process. *See, e.g., McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (rejecting generic objections that the requested discovery was "overly broad, burdensome, and oppressive" without specific proof supporting each objection). Each of these objected-to topics is tied specifically to an issue in dispute in the litigation pending in South Carolina:

### Topic 1 (HP Admin's Contracts Related to the 2006 Coverage Agreement)

This topic asks about any contracts that HP Admin or its employees have entered that relate to the insurance policies governed by the 2006 Coverage Agreement, which is a central contract at issue in the South Carolina litigation. On its face, this topic is not far-flung or open-ended, but instead is specific in its terms, and is limited to a core issue of the underlying case.

### Topics 2, 3, 4, and 23 (HP Admin's Provision of Litigation-Related Services)

As discussed above, HP Admin's employees have provided virtually all sworn testimony on behalf of the Wood Defendants in the South Carolina Action, including verifying their interrogatory responses. (Defendants' Interrogatory Reponses and Accompanying Verification

(Apr. 28, 2016) (Comp. App. 058).) Additionally, HP Admin's employees have recently prepared documents that the Wood Defendants produced to Companion as if the Wood Defendants, rather than HP Admin employees, created the documents. This deceptive discovery practice became so out-of-hand that the court in South Carolina ordered counsel for the Wood Defendants to provide a list of all documents that HP Admin's employees had prepared and produced to Companion as if they had been created by the Wood Defendants in the ordinary course; as of July 9, 2016, there were at least 90 such documents. (Letter from Kerry Rigas (July 9, 2016) (Comp. App. 059–060).)

In light of HP Admin's thorough involvement in the underlying litigation, it is essential for Companion to know:

- What contractual arrangements are behind HP Admin's provision of litigation services to Mr. Wood and his other companies (Topic 2),

- What role HP Admin's employees have been playing with respect to this litigation and whether they have been compensated for their participation (Topic 3),

- What source materials HP Admin's employees have been using to create documents on behalf of Mr. Wood's other companies for the underlying litigation (Topic 4), and

- What role HP Admin's employees played in preparing written discovery responses for Mr. Wood and his companies (Topic 23).

## Topic 5 (Location of Relevant Records)

Before Companion noticed HP Admin's deposition, the Wood Defendants had produced fewer than 21,000 documents in the South Carolina Action. After Companion noticed this deposition—and within three weeks of the close of discovery—the Wood Defendants have produced almost 150,000 more documents. In other words, over 87% of their total production has come after Companion made it clear that it desired to procure sworn testimony from HP Admin on the location of records related to the policies and contracts at issue in the South

Carolina Action. Additionally, Ms. Wynn, an HP Admin employee, has provided a sworn statement in the South Carolina Action explaining why certain of the Wood Defendants' records have been lost or destroyed. (Decl. Kristin Wynn (July 9, 2016) (filed as Dkt. No. 144 in the Underlying Case) (Comp. App. 061).) In that sworn declaration, Ms. Wynn stated that there was a shared system-wide loss of records over a two-year period. The system appears to have been shared among the Wood Defendants and HP Admin.

Companion is entitled to know what role HP Admin played in maintaining or destroying these records, and to discover whether there are even more records that could relate to the claims and defenses in the South Carolina Action that have not been produced. This deposition topic is limited accordingly.

### Topics 6 and 20 (HP Admin's Corporate Structure and Comingling of Employees)

Like Topics 2, 3, and 4, Companion seeks information regarding how HP Admin is controlled in order to understand what role HP Admin played in the overall business relationship that Mr. Wood and his companies presented to Companion (Topic 20), and to understand why HP Admin's employees have provided testimony on behalf of Mr. Wood and his other companies (Topic 6). In light of the shell-game that has been played, both before and during litigation, this information is essential to getting a complete picture of how Mr. Wood's various companies interact among themselves and with respect to their contractual agreements with Companion. Discovery has revealed that individuals worked simultaneously for multiple Wood Defendants and HP Admin. Just a few days ago, on August 19, 2016, one of the Wood Defendants' proposed experts testified that he met with HP Admin employees to learn about the issues on which he was opining, and he characterized those HP Admin employees as working for the "AMS organization." (Excerpts of Key Coleman Deposition (Comp. App. 063–066).)

**Topics 7, 13, 19, and 22 (HP Admin's Role in Financial Matters)**

Companion's fifth cause of action in the South Carolina Action is for an accounting for all of the Wood Defendants' activities related to their contracts with Companion. (App. 0036 (Dkt. No. 4).) To assist in obtaining a complete understanding of these financial maneuvers and the movement of money among the Wood Defendants and HP Admin, Companion has identified four different subjects on which it seeks information concerning HP Admin's involvement with the finances of the various companies:

- Topic 7 asks HP Admin to provide testimony about HP Admin's role in moving money around among the various companies, and its role in transferring money to Companion itself. Though the issue extends back to the beginning of the 2006 Coverage Agreement, Companion has voluntarily limited Topic 7 to the time period of January 1, 2009, to present.

- Topic 13 seeks testimony regarding Mr. Wood's involvement in moving funds among his various companies and Dallas National Insurance Company, a former Wood-owned business that is currently in liquidation proceedings before the Delaware Insurance Commissioner.

- Topic 19 seeks information regarding whether HP Admin used any of its own funds to pay obligations owed by Mr. Wood or his other companies, or if it received monies that belonged to Mr. Wood or his other companies.

- Topic 22 seeks testimony regarding HP Admin's participation in preparing and maintaining financial statements and records for Mr. Wood or his other companies.

The information sought by these topics is essential to providing a complete accounting in the underlying litigation and understanding the totality of the schemes perpetrated by Mr. Wood and his companies. Indeed, HP Admin controlled various bank accounts from which payments were made to Companion (and among the Wood Defendants and HP Admin), and HP Admin deposited collateral with Companion securing AMS's obligations to pay its deductibles.[4] The

---

[4]  As an example of the money movement among HP Admin and the Wood Defendants, Companion has included an email reflecting Highpoint Risk Services reimbursing HP Admin for a $4.7 million wire that HP Admin sent to Dallas National in 2012. (Comp. App. 067.)

role of HP Admin is highly relevant to the parties' claims and defenses regarding, among other things, claims payments and the sufficiency and disposition of collateral.

### Topic 12 (HP Admin's Role in the Contracts Underlying the South Carolina Litigation)

Companion has asked HP Admin to provide a witness to testify about any knowledge of or involvement that company had with respect to the various contracts at issue in the South Carolina litigation, including any insurance policies issued pursuant to those agreements and any amendments or modifications of those agreements. If HP Admin has any such knowledge or involvement, it would obviously be relevant to the South Carolina Action.

### Topic 14 (Agency Relationship)

A key issue in the South Carolina Action is how one of the Wood Defendants, Highpoint Risk Services (another of Mr. Wood's companies), performed in its capacity as an agent for Companion, as Highpoint Risk Services's conduct violated its contractual obligations to Companion and exposed Companion to substantial risk and millions of dollars of damage. Because Mr. Wood commingled resources and employees among his many entities in such a way as to render them indistinct from one another, Companion has inquired about HP Admin's knowledge of or involvement with Companion's relationship with Highpoint Risk Services.

### Topics 17 and 18 (Issuance of Policies on Companion Paper)

Another core issue in the South Carolina litigation is the fact that the Wood Defendants were fraudulently writing insurance policies on Companion paper. In some instances, they wrote insurance on Companion's paper in jurisdictions beyond those agreed upon by the parties (Topic 17). In others, they improperly issued two sets of overlapping workers' compensation policies to the same clients for the same time periods: one set on Companion paper, and another set on the paper of Dallas National Insurance Company, Companion's 100% reinsurer that was wholly-

owned by Mr. Wood during the relevant time period (Topic 18). If HP Admin has any knowledge of or involvement in those acts, which is likely, Companion is entitled to discover that information.

* * * * *

As illustrated above, Companion has worked hard to craft its deposition topics narrowly to touch on only relevant information that goes to the primary issues of the litigation in South Carolina. When faced with similar objections by the Wood Defendants to a Rule 30(b)(6) notice, the court in South Carolina denied their request for a protective order. (Order Denying Motion for Protective Order (Dkt. No. 154 in the Underlying Case) (Comp. App. 31).) This Court should follow suit and reject HP Admin's objections based on scope and relevancy.

**II.     Because Companion seeks information unique to HP Admin or within HP Admin's knowledge, this testimony will not be duplicative.**

For all 23 deposition topics, HP Admin objected on grounds that the information sought could be obtained through Mr. Wood's other companies. (App. 0209–0215 (Dkt. No. 4).) This boilerplate objection ignores the fact that Companion has crafted its deposition notice to secure *HP Admin's knowledge* of the various topics—the essence of a Rule 30(b)(6) deposition. There is simply no way under the Federal Rules of Civil Procedure or the Federal Rules of Evidence that any of Mr. Wood's other companies can testify to what this particular entity knows, and such an argument ignores the entire point of Rule 30(b)(6). *See, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, Case No. 07-MD-1840-KHV, 2009 U.S. Dist. LEXIS 118705, at *41 (D. Kan. Dec. 16, 2009) (rejecting an argument that a Rule 30(b)(6) deposition was duplicative and cumulative where others had already testified about the noticed topics because "Plaintiffs are entitled to learn MPC's official corporate position—based on institutional knowledge of the corporation—on the noticed topics").

Moreover, when Companion tried to get information regarding HP Admin from Mr. Wood's other companies, those companies objected, and the court in South Carolina instructed Companion to procure information regarding HP Admin through "other means." (Order on Motion for Protective Order at 5 (Dkt. No. 125 in the Underlying Case) (Comp. App. 023).) Because Companion has followed through with that court's instructions, this Court should reject HP Admin's objection that this discovery should be procured from Mr. Wood's other companies. *See, e.g., Celanese Corp.*, 2016 U.S. Dist. LEXIS 35124, at *16–17 (rejecting a nonparty's objection that the subpoenaed materials should have already been discovered from the parties themselves). And as discussed, to the extent they have such knowledge, the Wood Defendants have refused to provide any information about HP Admin. The Wood Defendants and HP Admin (and their counsel) cannot have it both ways.

Incredibly, HP Admin states in its motion that it "would literally be impossible" for HP Admin to provide different testimony from what has been, or will be, provided by the Wood Defendants. (HP Admin's Am. Mot. at 3 (Dkt. No. 3); *see also id.* at 19 ("HP Admin cannot provide any different testimony than Defendants to [Companion's] requests.").) Commingling and the lack of any firewall between the Wood Defendants is a key issue in the South Carolina Action. This remarkable admission regarding the incestuous relationship between the Wood Defendants and HP Admin makes it all the more critical for Companion to depose HP Admin about its knowledge on these issues.

## III.   HP Admin personnel are already intimately familiar with the facts, claims, and defenses of the underlying case.

HP Admin's final objection is that it would be overwhelming for the organization to prepare a designee to testify about the topics noticed in the subpoena. According to HP Admin, its employees would have to spend in excess of "fifty hours, if not closer to one hundred hours"

preparing testimony if the Court were to enforce Companion's subpoena as it is written. (HP Admin's Am. Mot. at 23 (Dkt. No. 3).) HP Admin bases this hyperbolic estimate on the fact that it "is not privy to the considerations of Defendants [*i.e.* Mr. Wood and his other companies] and their counsel in prosecuting and/or defending the underlying Lawsuit." (*Id.* at 19.)

This is pure fiction. HP Admin has been instrumental in the South Carolina Action from the outset:

When Mr. Wood and his companies needed someone to verify their answers to Companion's interrogatories in the underlying lawsuit, they turned to an HP Admin employee. (Defendants' Interrogatory Reponses and Accompanying Verification (Apr. 28, 2016) (Comp. App. 058).)

When Mr. Wood and his companies needed someone to explain to the court in South Carolina why so many of their potentially relevant documents had been destroyed, they enlisted an HP Admin employee. (Decl. Kristin Wynn (July 9, 2016) (filed as Dkt. No. 144 in the Underlying Case) (Comp. App. 061).)

When the court in South Carolina ordered Mr. Wood and his companies to provide evidence supporting the damages they allege in their counterclaims, they called on an HP Admin employee (who could not identify any such evidence). (Decl. Kristin Wynn (June 23, 2016) (filed as Dkt. No. 138-1 in the Underlying Case) (Comp. App. 070).)

When Mr. Wood and his companies attempted to explain to the court in South Carolina how the parties' so-called "PayGo" insurance policies were structured, they presented a declaration from an HP Admin employee. (Decl. Kristin Wynn (Mar. 4, 2016) (filed as Dkt. No. 107-1 in the Underlying Case) (Comp. App. 074).)

When Mr. Wood and his companies sought to cloak certain conversations with the attorney-client privilege, HP Admin employees testified that they considered themselves to also be an "agent or representative" of Mr. Wood's other companies for purposes of communicating with counsel. (Decl. Kristin Wynn (June 7, 2016) (filed as Dkt. No. 124-1 in the Underlying Case) (Comp. App. 078); Decl. Jennifer Hauger (June 7, 2016) (filed as Dkt. No. 124-2 in the Underlying Case) (Comp. App. 079).)

And when Companion noticed a Rule 30(b)(6) deposition of AMS Staff Leasing, one of Mr. Wood's companies, two different HP Admin employees testified as the designees for AMS. (Excerpts from Deposition of AMS Staff Leasing (May 6, 2016) (Comp. App. 006–016, 080–087.)

It is incredible that HP Admin would come to this Court pretending to have no awareness of the facts or claims pending in the underlying case—a point that is demonstrably false—and ask for Companion to be sanctioned for subpoenaing HP Admin to provide testimony on its own behalf about its own knowledge of the circumstances surrounding Mr. Wood's schemes and commingling. There is simply no merit to HP Admin's suggestion that it would be starting from scratch to prepare testimony about the topics that Companion has noticed, and the Court should reject HP Admin's final objection (as well as its request for sanctions) accordingly. *See, e.g.*, *Celanese Corp.*, 2016 U.S. Dist. LEXIS 35124, at *17–18 (rejecting a nonparty's objection that it would take "at least 100 hours" to prepare its response to a subpoena).

## CONCLUSION

Following the instructions of the federal court in South Carolina, Companion has sought discovery from HP Admin that is otherwise unobtainable on topics that are central to the underlying litigation. Mindful of its obligations under the Federal Rules, Companion has

narrowly drawn the topics for examination to ensure that the testimony stays within the boundaries of the underlying litigation, and it gave HP Admin a full month to prepare for the deposition. In short, HP Admin is highly relevant to the parties' claims and defenses in the South Carolina Action and has already involved itself in numerous aspects of the case, and Companion is entitled to depose the company regarding the limited topics listed in the deposition notice.

For the reasons explained above, the Court should reject HP Admin's attempts to obstruct the discovery of facts that are highly relevant to pending litigation, deny its motion in every respect, and direct it to produce its designee or designees for a deposition on September 7, 2016, as Companion has properly noticed.

Respectfully submitted,

MUNSCH HARDT KOPF & HARR, P.C.

By: /s/ D. Ronald Reneker
Texas Bar No. 16770000
rreneker@munsch.com
Michael C. Lee
Texas Bar No. 24051735
mlee@munsch.com
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
214-855-7500

Attorneys for Companion Property and Casualty Insurance Company

August 24, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by means of CM/ECF E-SERVICE this : 24th day of August, 2016.

By: /s/ D. Ronald Reneker