IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company, | ) ) ) | Misc. No. 3:16-mc-00075-D-BF |
| Plaintiff, | ) ) | In re: No. 3:14-cv-03719-CMC (D.S.C.) |
| vs. | ) ) ) | |
| Charles David Wood, Jr., et al., | ) ) | |
| Defendants. | ) ) ) | |

**COMPANION'S APPENDIX IN OPPOSITION TO HIGHPOINT ADMINISTRATIVE SERVICES' AMENDED MOTION TO QUASH**

| 1. | Corporate Materials for Highpoint Administrative Services | Comp. App. 001 |
|---|---|---|
| 2. | Excerpts from Rule 30(b)(6) Deposition of AMS Staff Leasing (Kristin Wynn as designee) | Comp. App. 006 |
| 3. | Email Correspondence from Highpoint Administrative Services Personnel | Comp. App. 017 |
| 4. | Order Denying Motion for Protective Order (Dkt. No. 125 in Underlying Case) | Comp. App. 019 |
| 5. | Affidavit of Richard Euler (July 6, 2016) | Comp. App. 026 |
| 6. | Certificate of Service of Subpoena from Texas Secretary of State (July 12, 2016) | Comp. App. 030 |
| 7. | Order Denying Motion for Protective Order (Dkt. No. 154 in Underlying Case) | Comp. App. 031 |

| 8.  | Affidavit of Richard Euler (August 1, 2016) | Comp. App. 035 |
|-----|---------------------------------------------|----------------|
| 9.  | Email Correspondence from Counsel for Highpoint Administrative Services (August 9, 2016) | Comp. App. 038 |
| 10. | Sixth Amended Scheduling Order (Dkt. No. 164-1 in Underlying Case) | Comp. App. 040 |
| 11. | Defendants' Interrogatory Responses and Accompanying Verification (April 28, 2016) | Comp. App. 043 |
| 12. | Letter from Kerry Rigas (July 9, 2016) | Comp. App. 059 |
| 13. | Declaration of Kristin Wynn (Dkt. No. 144 in Underlying Case) | Comp. App. 061 |
| 14. | Excerpts from Deposition of Key Coleman | Comp. App. 063 |
| 15. | Email Correspondence Among Highpoint Administrative Services Personnel Regarding Internal Movement of Money | Comp. App. 067 |
| 16. | Declaration of Kristin Wynn (Dkt. No. 138-1 in Underlying Case) | Comp. App. 070 |
| 17. | Declaration of Kristin Wynn (Dkt. No. 107-1 in Underlying Case) | Comp. App. 074 |
| 18. | Declaration of Kristin Wynn (Dkt. No. 124-1 in Underlying Case) | Comp. App. 078 |
| 19. | Declaration of Jennifer Hauger (Dkt. No. 124-2 in Underlying Case) | Comp. App. 079 |

| 20. | Excerpts from Rule 30(b)(6) Deposition of AMS Staff Leasing (Jennifer Hauger as designee) | Comp. App. 080 |
|---|---|---|

Respectfully submitted,

MUNSCH HARDT KOPF & HARR, P.C.

By: /s/ D. Ronald Reneker
   Texas Bar No. 16770000
   *rreneker@munsch.com*
   Michael C. Lee
   Texas Bar No. 24051735
   *mlee@munsch.com*
   500 N. Akard Street, Suite 3800
   Dallas, Texas 75201
   214-855-7500

Attorneys for Companion Property and Casualty Insurance Company

August 24, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on all counsel of record by means of CM/ECF E-SERVICE this 24th day of August, 2016.

By: /s/ D. Ronald Reneker

08/19/2010 15:43    9728879996    MEREDITH ASSOCIATES    PAGE 03/18

**ARTICLES OF INCORPORATION**

**OF**

**HIGHPOINT ADMINISTRATIVE SERVICES, INC**

**FILED**
In the Office of the
Secretary of State of Texas

AUG 19 2010

Corporations Section

The undersigned, as incorporator of a corporation under the Texas Business Corporation Act, hereby adopts the following Articles of Incorporation:

### ARTICLE ONE

The name of the Corporation is Highpoint Administrative Services, Inc

### ARTICLE TWO

The period of the Corporation's duration is perpetual.

### ARTICLE THREE

The purpose for which the Corporation is organized is to transact any and all lawful business for which corporations may be incorporated under the Texas Business Corporation Act.

### ARTICLE FOUR

(a) Authorized Shares. The aggregate number of shares, which the Corporation is authorized to issue, is One Thousand (1,000) shares with $1.00 par value. The shares shall be designated as Common Stock and shall have identical rights and privileges in every respect.

(b) Shareholders Agreements. The shares held by any Shareholder shall be subject to any restrictions thereon contained in any agreements entered into by that Shareholder.

(c) Redemption of Shares. The Corporation shall have the right to purchase or redeem, directly or indirectly, its own shares of any class or series, to the maximum extent permitted by law when such purchase or redemption is authorized by the Board of Directors. Shares purchased or redeemed by the Corporation shall constitute treasury shares unless such shares are redeemable by their terms, in which case the terms of issuance of such redeemable shares, or action of the Board of Directors, or applicable

Comp. App.000001

law, as the case may be, shall determine the status of such shares following their purchase or redemption by the Corporation.

## ARTICLE FIVE

The Corporation will not commence business until it has received for the issuance of its shares consideration of the value of One Thousand dollars ($1,000), consisting of money, labor done or property actually received.

## ARTICLE SIX

No Shareholder or other person shall have any preemptive rights of any kind to acquire additional, unissued or treasury shares of the Corporation, or securities of the Corporation convertible into, or carrying rights to subscribe to or acquire, shares of any class or series of the Corporation's capital stock, unless, and to the extent that, such rights may hereafter be expressly granted by appropriate corporate action.

## ARTICLE SEVEN

The Shareholders of the Corporation shall not have pre-emptive rights to acquire shares or other securities of the Corporation

## ARTICLE EIGHT

Cumulative voting in the election for Directors shall not be permitted.

## ARTICLE NINE

No contract or other transaction between the Corporation and any of its Directors, Officers or Shareholders (or any corporation or entity in which any of them are directly or indirectly interested) shall be invalid solely because of such relationship or because of the presence of such Director, Officer or Shareholder at the meeting authorizing such contract or transaction, or his participation in such meeting or organization; if (1) the material facts of the relationship or interest of such Director, Officer or Shareholder are known or disclosed (a) to the Board of Directors and it nevertheless authorizes or ratifies the contract or transaction by a majority of the Directors present, each such interested Director to be counted in determining whether a quorum is present but not in calculating the majority necessary to carry the vote, or (b) to the Shareholders and they nevertheless authorize or ratify the contract or transaction by a majority of the shares present, each such interested Shareholder to be counted for quorum and voting purposes; or (2) the

Comp. App.000002

contract or transaction is approved by a majority of the shares present, each such interested Shareholder to be counted for quorum and voting purposes; or (3) the contract or transaction is fair to be Corporation as of the time it is authorized or ratified by the Board of Directors, a committee of the Board, or the Shareholders. This provision shall not be construed to invalidate a contract or transaction would be valid in the absence of this provision.

## ARTICLE TEN

The Corporation shall indemnify any Director, Officer, or Employee or former Director, Officer, or Employee of the Corporation, any person who may have served at its request as a Director, Officer, or Employee of another corporation in which it owns shares of stock or of which it is a creditor, to the extent he is not indemnified by insurance, against expenses actually and necessarily incurred by him in connection with the defense of any civil or criminal action, suit, or proceeding in which he is made a party by reason of being or having been such a Director, Officer or Employee of this Corporation, except in relation to matters as to which he shall be adjudged in such action, suit, or proceeding to be liable for negligence or misconduct in the performance of duty. Such indemnification and reimbursement shall not be deemed exclusive of any right to which those indemnified may be entitled under any agreement, vote of Shareholders, or otherwise.

## ARTICLE ELEVEN

The number of directors constituting the initial board of directors is one, and the names and addresses of the person or persons who are to serve as directors until the first annual meeting of the Shareholders or until their successors are elected and qualified are:

> Dave Wood
> 14160 Dallas Parkway Suite 500
> Dallas, TX 75254

Comp. App.000003

08/19/2010  15:43    9728879996              MEREDITH ASSOCIATES                    PAGE  06/10

### ARTICLE TWELVE

(a) <u>Initial Bylaws.</u>  The initial Bylaws of the Corporation shall be adopted by the Board of Directors.

(b) <u>Amendment, Etc., of Bylaws.</u>  The Shareholders of the Corporation hereby delegate to the Board of Directors the power to adopt, alter, amend or repeal the Bylaws of the Corporation.  Such powers shall be vested exclusively in the Board of Directors and shall not be exercised by the Shareholders.

### ARTICLE THIRTEEN

The address of the initial registered office of the Corporation is 251 O'Connor Ridge Blvd, Suite 370, Irving, Texas 75038, and the name of its initial registered agent at such address is Karen A. Meredith

### ARTICLE FOURTEEN

The name and address of the incorporator is:

> Karen A. Meredith, CPA
> 251 O'Connor Ridge Blvd. Suite 370
> Irving, TX 75038

I have hereunto set my hand this ___19___ day of ___August___, 2010.

Highpoint Administrative Services, Inc
a Texas Corporation

By: _____
Karen A. Meredith, CPA

Highpoint Administrative Services, Inc. Articles of Incorporation                    Page 4 of 4

# TEXAS FRANCHISE TAX PUBLIC INFORMATION REPORT

*To be filed by Corporations and Limited Liability Companies (LLC) and Financial Institutions*
**This report MUST be signed and filed to satisfy franchise tax requirements**

Comptroller 05-102
of Public (9-09/29)
Accounts ■ Tcode 13196
FORM

■ **Taxpayer number**

| 3 | 2 | 0 | 4 | 2 | 4 | 7 | 8 | 5 | 9 | 7 |

■ **Report year**

| 2 | 0 | 1 | 5 |

**You have certain rights** under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at (512) 463-4600, or (800) 252-1381, toll free nationwide.

**Taxpayer name**
HIGHPOINT ADMINISTRATIVE SERVICES, INC.

| Mailing address 4455 LBJ FREEWAY SUITE 1080 | | | | Secretary of State file number or Comptroller file number |
| City DALLAS | State TX | ZIP Code 75244 | Plus 4 | 0801308511 |

○ Blacken circle if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

| Principal office 4455 LBJ FREEWAY SUITE 1080, DALLAS, TX, 75244 |
| Principal place of business 4455 LBJ FREEWAY SUITE 1080, DALLAS, TX, 75244 |

*Please sign below!*

Officer, director and member information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or members change throughout the year.

3204247859715

**SECTION A** Name, title and mailing address of each officer, director or member.

| Name AMANDA WOOD | Title PRESIDENT | Director ● YES | Term expiration | m m d d y y |
| Mailing address 4715 WEST AMHERST | City DALLAS | | State TX | ZIP code 75209 |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | | State | ZIP code |
| Name | Title | Director ○ YES | Term expiration | m m d d y y |
| Mailing address | City | | State | ZIP code |

**SECTION B** Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of ten percent (10%) or more.

| Name of owned (subsidiary) corporation or limited liability company NONE | State of formation | Texas SOS file number, if any | Percentage of Ownership |
| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS file number, if any | Percentage of Ownership |

**SECTION C** Enter the information required for each corporation or LLC, if any, that owns an interest of ten percent (10%) or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company NONE | State of formation | Texas SOS file number, if any | Percentage of Ownership |

| Registered agent and registered office currently on file. *(See instructions if you need to make changes)* Agent: CHARLES DAVID WOOD JR. | ○ Blacken circle if you need forms to change the registered agent or registered office information. |
| Office: 4455 LBJ FREEWAY 1080 | City DALLAS | State TX | ZIP Code 75244 |

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use additional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or member and who is not currently employed by this, or a related, corporation or limited liability company.

| sign here ▶ RONALD W CL RONALD W CLAYBORN CP | Title PRESIDENT | Date 11/16/2015 | Area code and phone number ( 972 ) 404 - 0295 |

**Texas Comptroller Official Use Only**

| VE/DE ○ | PIR IND ○ |

Kristin Wynn - 5/6/2016

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

COMPANION PROPERTY AND        )
CASUALTY INSURANCE            )
COMPANY,                      )
                              )
                              )
Plaintiff and                )
Counterclaim-Defendant,      )
                              )
VS.                           ) Civil Action No.
                              ) 3:14-cv-03719-CMC
CHARLES DAVID WOOD, JR.,      )
ET AL,                        )
                              )
                              )
Defendants and               )
Counterclaim-Plaintiffs.     )

*********************************************************

ORAL DEPOSITION OF

KRISTIN WYNN

May 6, 2016

*********************************************************

ORAL DEPOSITION OF KRISTIN WYNN, produced as a
witness at the instance of the Plaintiff, and duly
sworn, was taken in the above-styled and -numbered cause
on the 6th day of May, 2016, from 9:16 a.m. to 4:47
p.m., before Brynna McGee, CSR in and for the State of
Texas, reported by machine shorthand, at the offices of
Munsch, Hardt, Kopf & Harr, P.C., 500 North Akard
Street, Suite 3800, Dallas, Texas, pursuant to the
Federal Rules of Civil Procedure.

Collins Realtime Reporting - Dallas, Texas - 214-220-2449

Kristin Wynn - 5/6/2016

5

1                    KRISTIN WYNN,

2    having been first duly sworn, testified as follows:

3                      EXAMINATION

4    BY MR. LEE:

5         Q.  Good morning, Ms. Wynn. I'm Harry Lee with the

6    law firm of Steptoe & Johnson.  I represent Companion

7    Property and Casualty Insurance Company in this matter.

8    Thank you for appearing today, and what I'd like to do

9    is ask you to state your full name for the record and

10   your date of birth.

11        A.  Kristin Joann Wynn, March 28th, 1967.

12        Q.  And what is your current business and home

13   address?

14        A.  My business address is 4455 LBJ Freeway,

15   Suite 1080, Dallas, Texas, 75244.  And my home address

16   is 4916 Remington Park Drive, Flower Mound, Texas,

17   75028.

18        Q.  And what business do you work at now?

19        A.  Highpoint Admin.

20        Q.  Ms. Wynn, I'm marking what is a Second Amended

21   Notice of Deposition of AMS Staff Leasing, Inc.; do you

22   see that?

23        A.  Yes, sir.

24        Q.  Are you the person who's been designated to

25   speak as to some of the topics listed in this notice

Kristin Wynn - 5/6/2016

6

1   today?

2       A.   Yes, sir.

3       Q.   And when did you first see this notice?

4       A.   I first saw this notice -- I can't recall the

5   exact date.  I saw it yesterday for sure, but I can't be

6   certain on any time prior to that.

7       Q.   Okay.  And let me give you some guidelines, but

8   before I do that, when did you learn that you were going

9   to be testifying about topics that are contained in this

10  notice?

11      A.   It's been discussed for some time.

12      Q.   All right.  And -- and what have you done to

13  make yourself knowledgeable about what information is

14  available to AMS Staff Leasing with respect to the

15  topics in this notice?

16      A.   I've been researching bank statements, e-mails,

17  any other correspondence that I could find.

18      Q.   And how long have you been doing that in

19  response to this notice?

20      A.   I've been working on these items for months.

21      Q.   Okay.  But you're not aware of seeing the

22  notice and the topics in there before yesterday?

23              MR. HAAS:  Objection, form.

24      A.   No, I didn't say that.

25      Q.   Okay.  When -- when do you have any better

Kristin Wynn - 5/6/2016

13

```
 1    You said you've been researching.  When did you start
 2    researching?
 3         A.   Honestly, I started researching when we
 4    separated ties with Companion.  We started gathering
 5    documents.
 6         Q.   Okay.  I'm talking about your preparation for
 7    this deposition.  When did you begin the preparation for
 8    this deposition as the designee for AMS?
 9         A.   I can't give you a specific date.
10         Q.   Can you give me a range?
11         A.   I've been gathering documents at least for
12    six months.
13         Q.   Okay.  The notice of this deposition hasn't
14    existed for six months, so when did you prepare for this
15    deposition?
16         A.   I honestly cannot give you a date.
17         Q.   Okay.  What did you do, specifically, as far as
18    reviewing documents to gather the information of AMS
19    known with respect to these deposition topics?
20         A.   I've scoured bank statements and e-mails and,
21    you know, accounting records, general ledger accounting
22    transactions.
23         Q.   And whose records were those?
24         A.   They were AMS's records.
25         Q.   Okay.  And have those records been made
```

Kristin Wynn - 5/6/2016

1  discovered that checks or that claims payments were

2  still occurring.  We had updated information since that

3  spreadsheet was sent to me by Dennis.

4      Q.  Okay.  And just so -- I want to make sure

5  whether there's a spreadsheet I'm missing.  I believe

6  Mr. Savage sent you something roughly in the

7  October 2013 time frame.  Ms. Hale wrote her letter with

8  spreadsheets on December 30, 2013.  So, there's a couple

9  months' difference.  Are you saying it's been an update

10 since December 30, 2013?

11     A.  Correct.

12     Q.  Okay.  Where's that update?

13     A.  We've submitted it to our attorneys.

14     Q.  Okay.  And when was that update done?

15     A.  Within the last 30 days.

16     Q.  Okay.

17          MR. LEE:  Counsel, we request production of

18 that document, and we will leave this deposition open in

19 order to take more testimony as to those documents.

20          MR. HAAS:  Counsel, those documents have

21 been produced, to my understanding.

22     Q.  What are they dated?  How can I find them?

23 I'll need to be able to know what they say.

24     A.  I'm not sure.  I don't know how -- how they

25 would be converted.  They send everything to a third

Kristin Wynn - 5/6/2016

56

```
 1              MR. HAAS:  Objection.
 2        A.   Yes.
 3        Q.   What?
 4        A.   Accounting services.
 5        Q.   Okay.  Did you perform any services in that
 6   period between 2002 and 2010 for Aspen?
 7              MR. HAAS:  Objection.
 8        A.   Administrators?
 9        Q.   Yes.
10        A.   No, sir.
11        Q.   How about any other Aspen entity?
12              MR. HAAS:  Objection.
13        A.   There -- 2010, let me think.  There's a PEO
14   named Aspen Staff Leasing, but I'm not sure of the dates
15   of its activity.
16        Q.   Did you perform any services for Dallas
17   National?
18        A.   No, sir.
19        Q.   Other than the companies I've listed, did you
20   perform any services for any other company in that 2002
21   to 2010 time frame?
22        A.   No, I did not.
23        Q.   Okay.  You said in 2010, you switched over to
24   HP Admin; is that what you said?
25        A.   Correct.
```

Kristin Wynn - 5/6/2016

57

1      Q.   What caused that switch?

2      A.   Mr. Wood was trying to set up his children

3  for -- and he wanted to retire, and so the idea was that

4  Highpoint Admin would provide, formally, administrative

5  services for all of these entities, some of which were

6  Mr. Wood's, but also other clients.  It had other --

7  third party relationships.

8      Q.   Okay.

9      A.   And so that was the idea, rather than just

10  working for PEOs, we serviced other staffing companies

11  and various other companies.

12     Q.   Okay.  So, I understand that -- your

13  description of Mr. Wood's goal.  But why did you move to

14  HP Admin?

15     A.   Because that was the entity that was performing

16  what I do, which is the accounting services.

17     Q.   And while at HP Admin, did you continue to

18  perform accounting services for the AMS entities?

19     A.   Yes, I did.

20     Q.   And did anyone take your place as controller

21  for AMS, or did you just serve in that role as well?

22     A.   I served in that role.

23     Q.   And when you say Mr. Wood wanted to set up

24  something for his children -- I didn't get -- what does

25  that have to do with HP Admin?

Comp. App.000012

Kristin Wynn - 5/6/2016

58

1              MR. HAAS:   Objection.

2              Ms. Wynn, I'm going to instruct you not to

3      answer.   This is outside the scope of the 30(b)(6)

4      notice, and this is not individual deposition.

5          Q.   Are you going to follow that instruction?

6          A.   Yes, sir.

7          Q.   With respect to HP Admin, how did you get paid?

8              MR. HAAS:   Ms. Wynn, I'm going to instruct

9      you not to answer that question, on the grounds it's

10     outside of the scope of the 30(b)(6) notice.

11              Counsel, if you can identify a topic that

12     this falls within, I'm happy to reconsider the

13     objection.

14              MR. LEE:   I'm happy to talk to you outside.

15              MR. HAAS:   Okay.

16              MR. LEE:   Actually, we can do this the

17     other way around.

18              Ms. Wynn, I'm going to excuse you from the

19     room, and we can put this on the record.

20              First of all, I'll say under the South

21     Carolina Rules, I believe your instruction is improper.

22     It's not based upon privilege, and you're at peril for

23     giving that instruction.   Nevertheless, given your

24     statement, I'm -- I believe that I'm entitled to examine

25     this witness who's been designated by AMS to provide

Comp. App.000013

Kristin Wynn - 5/6/2016

1   corporate testimony as to what the company knows.

2          I think, as part of that, I'm entitled to

3   know whether that corporate testimony could be biased in

4   any form or fashion, whether it can be influenced in any

5   form or fashion, and whether there's any reason that I

6   may not be getting full or complete or truthful answers.

7   The relationship between her and another defendant in

8   this case, her overlapping roles at various defendants

9   in this case, certainly go to that issue, if not other

10  issues, but that's the main reason for my asking the

11  questions, and that's why I'm entitled to continue.

12          MR. HAAS:  I believe your questions are

13  improper.  They're not set forth in the 30(b)(6) notice.

14  If there were certain issues that you're asking now that

15  you wanted to ask about that were proper, which they're

16  not, they should have been identified.

17          None of these topics were identified.

18  You're asking about parties and entities that are not a

19  party to this lawsuit.  It's harassing the witness.

20  It's extending the time of this deposition, and it's not

21  what she's here to testify on today.  I'm happy to get

22  the Court on the line at this point, and we can discuss

23  it with the Court's law clerk and get direction on this

24  issue.

25          MR. LEE:  I believe the process is that

Kristin Wynn - 5/6/2016

60

1    you're going to have to file a motion for protective

2    order at the end of this deposition and that you have to

3    do it within a certain period of time, and those are the

4    rules.   The deposition does not get hung up because of

5    your instruction not to answer.  We're going to continue

6    with the deposition with your instruction standing.

7              MR. HAAS:   I'm going to go off the record

8    at this time, and we're going to get the Court's law

9    clerk on the phone as was discussed with her earlier

10   this week with her.

11             MR. LEE:   Not on this topic.

12             MR. HAAS:   Absolutely.

13             MR. LEE:   The topics were 14 and 16, not

14   this.

15             MR. HAAS:   We are going to get the Court's

16   law clerk on the phone right now and discuss this issue.

17             MR. LEE:   We're going to break.  I'm going

18   to confer with counsel, and we'll be back in a minute.

19             (Break taken from 10:35 a.m. to 10:43 a.m.)

20             MR. LEE:   I've had a chance to confer with

21   counsel, and in light of the instruction, I'm going to

22   move to a different line of questioning.

23       Q.   Ms. Wynn, do you have any insurance background

24   beyond the insurance agency employment experience?

25       A.   No, sir.

Comp. App.000015

Kristin Wynn - 5/6/2016

111

```
 1    Ms. Hale?
 2                 MR. HAAS:   Objection.
 3                 Ms. Wynn, I caution you not to reveal your
 4    conversations or communications with Ms. Hale, as that's
 5    privileged.
 6         A.   I don't recall.
 7         Q.   Did you ever have any conversations with
 8    Ms. Hale, just yes or no?
 9         A.   Yes, I did have conversations with Ms. Hale.
10         Q.   Okay.  And do you know whether Ms. Hale was
11    aware from any form or fashion that Dallas National had
12    credited funds held in order to repay these amounts?
13                 MR. HAAS:   I'm going to object to that
14    question.  That calls for invading the attorney-client
15    privilege.  Instruct you not to answer that.
16         Q.   Did you know that Dallas National had repaid
17    these funds through a crediting of funds held?
18         A.   I have not validated that, but yes, that is
19    what they have told me.
20         Q.   Did you do anything to try to validate it
21    before today?
22         A.   I began research, but I have not completed it.
23         Q.   Okay.  So, today, you're unable to tell me, I
24    take it, on behalf of AMS, whether or not AMS has been
25    repaid through a crediting of funds held?
```

Collins Realtime Reporting - Dallas, Texas - 214-220-2449

To:       Jay Cogswell[Jay.Cogswell@comppandc.com]
From:     JENNIFER ADAMS
Sent:     Thur 10/10/2013 1:34:05 PM
Subject:  Dallas National / Highpoint - claims payments
Received: Thur 10/10/2013 1:34:00 PM
DNIC - claims payments
Dallas National ACH Procedures
FW: TPA bank changes - Companion Property

Jay,
Please see below email from Kristin at Highpoint. How should we respond to her last question?

The attached DNIC-claims payments email explains what happened regarding the claims payments. On
10/1/13 we converted to a new treasury system and the account settings were changed so the ACH drafts were
rejected. Evidently, Highpoint assumed that we stopped drafting from their claims accounts and were using the
collateral to pay the claims. I explained the ACH issue to Kristin and advised that we will request them all
again.

Also, I attached our current ACH procedure and an email from Dallas National on 10/7/13 containing the new
ACH info that we are to begin using by 10/15/13.

Thanks.

Jennifer J. Adams, CIC
Program Manager
Companion Property & Casualty Group
803-264-7267

-----Original Message-----
From: Kristin J. Wynn [mailto:KristinW@hpadmin.com]
Sent: Wednesday, October 09, 2013 12:55 PM
To: JENNIFER ADAMS
Cc: Eric Vogelsberg
Subject: Re: September 2013 AMS Invoice

Now that the policy is in run off shouldn't the claims be coming from the funds held.

Thanks

Kristin

On Oct 9, 2013, at 10:49 AM, "JENNIFER.ADAMS@companiongroup.com"
<JENNIFER.ADAMS@companiongroup.com> wrote:

> No, we are not reducing the collateral. I'm checking with our accounting department regarding the claims
payments and will let you know as soon as I hear back.
>
> Thanks.
>
> Jennifer J. Adams, CIC
> Program Manager
> Companion Property & Casualty Group
> 803-264-7267
>
>
> -----Original Message-----
> From: Kristin J. Wynn [mailto:KristinW@hpadmin.com]
> Sent: Wednesday, October 09, 2013 11:40 AM
> To: JENNIFER ADAMS; Eric Vogelsberg
> Subject: Re: September 2013 AMS Invoice



>
> Did you get my email yesterday regarding the claims. Are you reducing the collateral we have on deposit with you now that the policy is in run off?
>
> Thanks
>
> Kristin
>
> On Sep 20, 2013, at 10:32 AM, "JENNIFER.ADAMS@companiongroup.com"
<JENNIFER.ADAMS@companiongroup.com> wrote:
>
>> Kristin,
>> Please see the attached September 2013 AMS invoice.
>>
>> Thank you.
>>
>> Jennifer J. Adams, CIC
>> Program Manager
>> Companion Property & Casualty Group
>> 803-264-7267 (phone)
>>
>> <September 2013 Highpoint Agency Invoice - WC.doc>
>
>

Comp. App.000018

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| COMPANION PROPERTY AND CASUALTY INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>v.<br><br>CHARLES DAVID WOOD, JR.; AMS STAFF LEASING, INC., d/b/a/ AMS Staff Leasing Corporation; BRECKENRIDGE ENTERPRISES, INC., d/b/a AMS Staff Leasing II; AMS Staff Leasing II, Inc.; HIGHPOINT RISK SERVICES, LLC; and ASPEN ADMINISTRATORS, INC.,<br><br>       Defendants. | C/A No. 3:14-cv-03719-CMC<br><br>OPINION AND ORDER ON MOTION FOR PROTECTIVE ORDER<br>(ECF No. 118) |

This matter is before the court on Defendants' motion for a protective order filed pursuant to Local Civil Rule 30.04(C), D.S.C. ECF No. 118. For reasons explained below, the motion is granted.

**Objections Based on Attorney-Client Privilege.** To the extent instructions not to answer were based on attorney-client privilege, the court finds the privilege was properly asserted as to at least some aspects of the questions posed. Responses to other questions resulted in disclosure of non-privileged information relating to the same subject matter. Thus, to the extent any instruction not to answer based on attorney-client privilege may have been overbroad, the overbreadth was, ultimately harmless. The motion for protective order is, therefore, granted as to these instructions.

**Objections Based on Scope.** One instruction not to answer was based on a line of inquiry that went beyond the scope of the Fed. R. Civ. P. 30(b)(6) deposition notice: questions regarding Highpoint Administrative Services, Inc. (referred to as "HP Admin" in deposition and below), a

non-party to the litigation.[1]   The particular inquiries related to Defendant Wood's reasons for forming HP Admin and how the deponent was paid "with respect to HP Admin[,]" which is her employer.

Defense counsel instructed the witness not to answer these questions because they were outside the scope of the Fed. R. Civ. P. 30.06 deposition notice. Plaintiff argues this instruction was improper both because Local Civil Rule 30.04(C) does not allow an instruction not to answer under these circumstances and because the questions "sought discoverable information highly relevant to this case." ECF No. 121 at 1-2.

**Nature of Instruction.** As Plaintiff notes, Local Civil Rule 30.04(C) lists only three circumstances under which counsel may instruct a witness not to answer. The third circumstance is "to present a motion pursuant to Fed. R. Civ. P. 30(d)(1)." Rule 30(d)(1) of the Federal Rules of Civil Procedure, as currently worded, addresses only the time limitation on depositions. Read literally, this would prohibit the instruction not to answer based on scope of the deposition notice and relevancy.

Fed. R. Civ. P. 30 was revised in 2007 as part of a restyling of the rules. Fed. R. Civ. P. 30 (Comments, 2007 Amendments (noting changes were intended to be stylistic only)). Prior to that time, Fed. R. Civ. P. 30(d)(1) read as follows: "Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and non-suggestive manner. *A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion under paragraph (3)."* Fed.

---

[1]  While there is a "Highpoint" Defendant in this case, that entity is Highpoint Risk Services, LLC, not Highpoint Administrative Services, Inc.  The latter is, however, one of a family of businesses owned by Defendant Wood.

2

R. Civ. P. 30(d)(1) (2000) (emphasis added).  At that time, paragraph (3) included the following

language:

> (3)  At any time during a deposition, on motion of a party or of the deponent and
> upon a showing that the examination is being conducted in bad faith or in such
> manner as unreasonably to annoy, embarrass, or oppress the deponent or party, the
> court in which the action is pending or the court in the district where the deposition
> is being taken may order the officer conducting the examination to cease forthwith
> from taking the deposition, or may limit the scope and manner of the taking of the
> deposition as provided in Rule 26(c).

Fed. R. Civ. P. 30(d)(3) (2000).[2]

While there is no formal history or commentary in this district's local rules, it is the

undersigned's recollection that the rule limiting instructions not to answer was written when Fed.

R. Civ. P. 30(d)(3) was worded as above or contained comparable language.  In any event, this

local rule was intended to discourage (but not preclude) instructions not to answer by placing the

burden on the party who gave the instruction to move for protection within a limited time after the

deposition ended.  The rule was not intended to deprive a party of rights otherwise available under

the Federal Rules.

Given the history and purpose of Local Civil Rule 30.04, it appears the reference to Fed.

R. Civ. P. 30(d)(1) is the unintended result of a failure to update this local rule when stylistic

---

[2]  The current version of this paragraph is much the same:
> (3) *Motion to Terminate or Limit.*
> (A) *Grounds.* At any time during a deposition, the deponent or a party may move
> to terminate or limit it on the ground that it is being conducted in bad faith or in a
> manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.
> The motion may be filed in the court where the action is pending or the deposition
> is being taken. If the objecting deponent or party so demands, the deposition must
> be suspended for the time necessary to obtain an order.
Fed. R. Civ. P. 30(d)(3).

3

changes were made to Fed. R. Civ. P. 30 in 2007 (resulting in the change in Rule 30(d)(1) noted above). This court, therefore, construes Local Civil Rule 30.04(C) to allow instructions not to answer when counsel intends to present a motion under any subpart of Fed. R. Civ. P. 30(d). This corresponds with Local Civil Rule 30.04(B)'s preservation of all objections other than those that are specifically listed, which include objections "necessary to assert a privilege, to enforce a limitation directed by the court, or to present a motion pursuant to Fed. R. Civ. P. 30(d)." It also avoids conflict with provisions of the current version of the Federal Rules. *See* Fed. R. Civ. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, *or to present a motion under Rule 30(d)(3).*" (emphasis added). Any other interpretation would, at least in some circumstances, deprive parties of any ability to protect rights provided by Fed. R. Civ. P. 30(d)(3).[3]

As to the merits, the court agrees the subject matter of the particular queries went well beyond the scope of the Rule 30(b)(6) deposition and the instruction not to answer was appropriate on this basis. Plaintiff does not specifically address this concern. It, instead, argues the subject matter was relevant because the deponent and her fellow Rule 30(b)(6) designee (designated on behalf of AMS Staff Leasing, Inc.) have worked for HP Admin since 2010 and due to the intertwined relationship of Wood's various companies and certain actions at issue in the litigation in which HP Admin played a role. While it was appropriate, including if something of an expansion of the deposition notice, to determine the witnesses' relationship with HP Admin, that

---

[3] The court, in any event, has the authority "[f]or good cause shown in a particular case [to] suspend or modify any Local Civil Rule." Local Civil Rule 1.02, D.S.C. The court finds such suspension or modification appropriate here to the extent Local Civil Rule 30.04(C) precludes a motion to preserve rights otherwise available under Fed. R. Civ. P. 30(d)(3).

4

issue appears to have been addressed (given Plaintiff's knowledge of when the witness became

employed by HP Admin). Questions about HP Admin's formation and operation are, however,

sufficiently distinct from the subject matters of the deposition notice to be improper, whether or

not "relevant" to the litigation. The court, therefore, grants the motion for protective order as to

these queries. This does not preclude discovery on the topic, if otherwise relevant, through other

means.

   For reasons set forth above, Defendants' motion for a protective order as to the Rule

30(b)(6) deposition of AMS Staff Leasing, Inc. is granted.

   IT IS SO ORDERED.

                                        s/Cameron McGowan Currie
                                        CAMERON MCGOWAN CURRIE
                                        Senior United States District Judge

Columbia, South Carolina
June 9, 2016

5

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of South Carolina

| | |
|---|---|
| Companion Property and Casualty Insurance Company | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   3:14-cv-03719-CMC |
| Charles David Wood, Jr., et. al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        Highpoint Administrative Services, Inc.; Registered Agent: Charles David Wood, Jr.
4455 LBJ Freeway #1080  Dallas, TX 75244

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attached Notice

| Place:  Munsch Hardt Kopf & Harr, P.C. | Date and Time: |
|---|---|
| 500 N. Akard Street, Suite 3800    Dallas, Texas  75201 | 07/21/2016 9:30 am |

The deposition will be recorded by this method:      Court Reporter and/or Audiovisual

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     06/28/2016

CLERK OF COURT

OR

_____                _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Companion
Property and Casualty Insurance Company,                        , who issues or requests this subpoena, are:
Kevin A. Hall; Womble Carlyle Sandridge & Rice LLP  1727 Hampton St.  Columbia, SC  29201      803.454.6504
kevin.hall@wcsr.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:14-cv-03719-CMC

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Highpoint Administrative Services, Inc.
on *(date)* 07/05/2016 .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____  on *(date)* _____ ; or

☑ I returned the subpoena unexecuted because: PLEASE SEE ATTACHED AFFIDAVIT _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ 160.00 for services, for a total of $ 160.00 .

I declare under penalty of perjury that this information is true.

Date: 07/06/2016 _____

*Server's signature*

W Richard Euler, Process Server, SCH4905, Exp 03/31/2018
*Printed name and title*
PO Box 851164
Mesquite, TX 75185-1164

Phone: 972-533-6583
*Server's address*

Additional information regarding attempted service, etc.:

SEE ATTACHED
AFFIDAVIT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Companion Property and Casualty<br>Insurance Company,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>Charles David Wood, Jr., et al,<br><br>    Defendants and Counterclaim-Plaintiffs. | Civil Action No.3:14-cv-03719-CMC<br><br>AFFIDAVIT OF ATTEMPTED SERVICE<br>OF SUBPOENA TO TESTIFY AT A<br>DEPOSITION IN A CIVIL ACTION<br>ON HIGHPOINT ADMINISTRATIVE<br>. SERVICES, INC |

I, W. Richard Euler, having been first duly sworn do state the following that:

I am over the age of eighteen years and have no interest in the outcome of the above referenced cause. In addition, I am authorized to serve Civil Process in the State of Texas pursuant to Rules 103 and 536 of the Texas Rules of Civil Procedure (TRCP).

All of the facts stated herein are true and correct.

On **July 5, 2016, at 1:04 p.m.,** I received a SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION with PLAINTIFF'S NOTICE OF DEPOSITION OF HIGH POINT ADMINISTRATIVE SERVICES, INC, PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30(b)(6) and EXHIBITS attached, to be delivered to Highpoint Administrative Services, Inc. (the Witness); Registered Agent: Charles David Wood, Jr. (Registered Agent) at 4455 LBJ Freeway #1080 Dallas, TX 75244.

The following are my attempts to deliver said documents to the Witness:

On **July 5, 2016, at 1:41 p.m.,** I arrived at 4455 LBJ Freeway, Suite 1080, Dallas, Texas 75244 (the business address) and spoke with a white female, approximately 45 to 50 years of age. The

Page 1 of 3
Affidavit of Attempted Service on Highpoint Administrative Services, Inc.
USDC of SC (scdce) No. 3:14-cv-03719-CMC

woman said the Registered Agent was not in at the time. I left her my business card and asked her to have the Registered Agent to contact me. She agreed to do so and I left.

On **July 5, 2016, at 2:15 p.m.,** I arrived at the Registered Agent's home, located at 5518 Winston Court, Dallas, Texas 75220. The property is gated and does not allow entry without a security code or device. I signaled the house via the intercom, announced who I am, and stated I needed to see "Charles David Wood of Highpoint." A hispanic female came to the gate I was standing at and told me the Registered Agent was "not available." I asked if that meant he was not at home at that time and she answered with, "He's not available." I left her my business card and asked her to have the Registered Agent to contact me. She agreed to do so and I left.

On **July 5, 2016, at 4:54 p.m.,** the Texas Secretary of State's Office (SOS) advised me, Amanda Wood (President) served as the Witness' President and Director. The SOS provided me the same business address for the Witness as well as 4715 West Amherst, Dallas, TX 75209, a residential property, for the President. After further investigation, I acquired another address for the President, from Texas Driver License information, and later found out both properties were previously sold by the President, Amanda Wood. I was unable to ascertain any other current Texas addresses for the President. I have obtained other information that makes me believe she might be living out-of-state.

On **July 6, 2016, at 11:21 a.m.,** I was back at the business address and spoke with the same employee as the day before. She again told me the Registered Agent was not present and then told me he is out-of-town. I asked if she knew "where out-of-town" he may be and she replied, "No." I then asked if she knew how long it would be for the Registered Agent returned and she said she understood as late as September. I offered her another business card but she said she still had the last one I left. Later, I asked the woman if Amanda Wood, the President was present and she again reply with a "No." Then I asked if the President came in to the office on a regular basis and I received another "No." I thanked her for her time and left.

On July 6, 2016, at 11:46 a.m., I returned to the home address of the Registered Agent. I used the intercom to summon any occupants of the house and talked with what sounded like a

Page 2 of 3
Affidavit of Attempted Service on Highpoint Administrative Services, Inc.
USDC of SC (scdce) No. 3:14-cv-03719-CMC

Hispanic male. He as well, said the Registered Agent was "not available" and asked if I could leave a card. The same Hispanic female, from the day before, came out. As I handed her another business card, she told me the Registered Agent is out-of-state.

As a result of the statements made above and my inability to make service in a timely fashion, I will be returning the SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION with PLAINTIFF'S NOTICE OF DEPOSITION OF HIGH POINT ADMINISTRATIVE SERVICES, INC. PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30(b)(6) and EXHIBITS attached, with this affidavit, to the law firm that hired me.

Further, the Affiant saith not.



W. Richard Euler – SCH4905 (Exp. 03/31/2018)

**SUBSCRIBED AND SWORN TO** before me by W. Richard Euler on this the 6th day of July 2016, to attest witness my hand and seal of office.

DEBRA J. BAKER
Notary Public
STATE OF TEXAS
My Comm. Exp. August 20, 2017

Notary Public in and for the State of Texas

Page 3 of 3
Affidavit of Attempted Service on Highpoint Administrative Services, Inc.
USDC of SC (scdce) No. 3:14-cv-03719-CMC

# The State of Texas



Service of Process
P.O. Box 12079
Austin, Texas 78711-2079

Phone: 512-463-5560
Fax: 512-463-0873
TTY (800) 735-2989
www.sos.state.tx.us

## Secretary of State

July 12, 2016

Kevin A. Hall
Womble Carlyle Sandridge & Rice, LLP
1727 Hampton Street
Columbia, SC 29201

**2016-267875**

Include reference number in
all correspondence

RE: Companion Property and Casualty Insurance Company VS Charles David Wood, Jr., et al
    United States District Court District of South Carolina, Columbia Division
    Cause No: 314CV03719CMC

Dear Sir/Madam:

Please find enclosed your Certificate(s) of Service for the case styled above.

If this office may be of further assistance to you, please do not hesitate to contact us.

Sincerely,

Michael Orta
Service of Process

Enclosure



## The State of Texas
### Secretary of State

2016-267875-1

I, the undersigned, as Secretary of State of Texas DO HEREBY CERTIFY that according to the records of this office, a copy of the Subpoena to Testify at a Deposition in a Civil Action, Plaintiff's Notice of Deposition of Highpoint Administrative Services Inc. Pursuant to Federal Rule of Civil Procedure 30(b)(6) in the cause styled:

Companion Property and Casualty Insurance Company VS Charles David Wood, Jr., et al
United States District Court District of South Carolina, Columbia Division
Cause No: 314CV03719CMC

was received by this office on July 6, 2016, and that a copy was forwarded on July 12, 2016, by CERTIFIED MAIL, return receipt requested to:

Highpoint Administrative Services, Inc.
Registered Agent: Charles David Wood, Jr.
4455 LBJ Freeway #1080
Dallas, TX 75244



Date issued: July 12, 2016

Carlos H. Cascos
Secretary of State
GF/lc

Comp. App.000030

Carroll, Todd

| | |
|---|---|
| From: | SCDEfilingstat@scd.uscourts.gov |
| Sent: | Monday, July 18, 2016 3:55 PM |
| To: | scd_ecf_nef@scd.uscourts.gov |
| Subject: | Activity in Case 3:14-cv-03719-CMC Companion Property and Casualty Insurance Company v. Wood et al Order |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

## U.S. District Court

### District of South Carolina

## Notice of Electronic Filing

The following transaction was entered on 7/18/2016 at 3:55 PM EDT and filed on 7/18/2016
**Case Name:**      Companion Property and Casualty Insurance Company v. Wood et al
**Case Number:**      3:14-cv-03719-CMC
**Filer:**
**Document Number:** 154(No document attached)

**Docket Text:**
**TEXT ORDER: Defendants' request for a protective order limiting the scope of Fed. R. Civ. P. 30(b)(6) depositions (ECF No. [150]) is denied. The court finds the subject matters appropriate in light of Plaintiff's explanation and clarification of the topics to which the notice is directed (ECF No. [152]). Signed by Honorable Cameron McGowan Currie on 7/18/2016. (cbru, )**

**3:14-cv-03719-CMC Notice has been electronically mailed to:**

Louis H Lang   louislang@callisontighe.com, crystalsmith@callisontighe.com, katieminton@callisontighe.com

Richard Carl Detwiler   rickdetwiler@ctrlawfirm.com, deehardwick@callisontighe.com

Kevin A Hall   kevin.hall@wcsr.com, debbie.johnson@wcsr.com, todd.mathis@wcsr.com

Matthew Todd Carroll   todd.carroll@wcsr.com, debbie.johnson@wcsr.com, todd.mathis@wcsr.com

Eric Haas   eh@gardnerhaas.com

Michael S Gardner   mg@gardnerhaas.com

1

Comp. App.000031

Harry Lee    hlee@steptoe.com

Conor Phillip Brady    cbrady@steptoe.com

Jeremy Daniel Camp    jc@gardnerhaas.com

**3:14-cv-03719-CMC Notice will not be electronically mailed to:**

2

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of South Carolina

| | |
|---|---|
| Companion Property and Casualty Insurance Company | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   3:14-cv-03719-CMC |
| Charles David Wood, Jr., et al. | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      Highpoint Administrative Services, Inc.; Registered Agent: Charles David Wood, Jr.
            4455 LBJ Freeway #1080 Dallas, TX 75244
*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See attached Amended Notice and accompanying exhibits

| Place: Munsch Hardt Kopf & Harr, P.C. | Date and Time: |
|---|---|
| 500 N. Akard Street, Suite 3800    Dallas, Texas 75201 | 09/07/2016 9:30 am |

The deposition will be recorded by this method:    Court Reporter and/or Audiovisual

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/27/2016

| | |
|---|---|
| *CLERK OF COURT* | OR |
| _____ | _____ |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Companion Property and Casualty Insurance Company         , who issues or requests this subpoena, are:

M. Todd Carroll; Womble Carlyle Sandridge & Rice LLP   1727 Hampton St.   Columbia, SC 29201    803.454.6504
todd.carroll@wcsr.com

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 3:14-cv-03719-CMC

### PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* Highpoint Administrative Services, Inc.
on *(date)* 07/28/2016 .

◻ I served the subpoena by delivering a copy to the named individual as follows:

_____

_____ on *(date)* _____ ; or

☑ I returned the subpoena unexecuted because: PLEASE SEE ATTACHED AFFIDAVIT

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ 410.00 for services, for a total of $ 410.00 .

I declare under penalty of perjury that this information is true.

Date: 08/01/2016 _____
*Server's signature*

W Richard Euler, SCH4905 (Exp 03/31/2018)
*Printed name and title*
PO Box 851164
Mesquite, TX 75185-1164

Phone: 972-533-6583
*Server's address*

Additional information regarding attempted service, etc.:

SEE ATTACHED
AFFIDAVIT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Companion Property and Casualty<br>Insurance Company,<br><br>    Plaintiff and Counterclaim-Defendant,<br><br>vs.<br><br>Charles David Wood, Jr., et al,<br><br>    Defendants and Counterclaim-Plaintiffs. | Civil Action No.3:14-cv-03719-CMC<br><br>AFFIDAVIT OF ATTEMPTED SERVICE<br>OF SUBPOENA TO TESTIFY AT A<br>DEPOSITION IN A CIVIL ACTION<br>ON HIGHPOINT ADMINISTRATIVE<br>SERVICES, INC |

I, W. Richard Euler, having been first duly sworn do state the following that:

I am over the age of eighteen years and have no interest in the outcome of the above referenced cause. In addition, I am authorized to serve Civil Process in the State of Texas pursuant to Rules 103 and 536 of the Texas Rules of Civil Procedure (TRCP).

All of the facts stated herein are true and correct.

On **Thursday, July 28, 2016, at 9:18 a.m.,** I received a SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION with PLAINTIFF'S AMENDED NOTICE OF DEPOSITION OF HIGH POINT ADMINISTRATIVE SERVICES, INC. PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 30(b) (6) and EXHIBITS attached, to be delivered to **Highpoint Administrative Services, Inc. (the Witness); Registered Agent: Charles David Wood, Jr. (the Registered Agent) at 4455 LBJ Freeway #1080 Dallas, TX 75244.**

The following are my attempts to deliver said documents to the Witness:

On **Thursday, July 28, 2016, at 10:15 a.m.,** I arrived at **5518 Winston Court, Dallas, Texas 75220 (the Registered Agent's Residence),** the home of the Registered Agent. A Hispanic male was outside the property gates and told me the Registered Agent had just left to play golf. I

Page 1 of 3
Affidavit of Attempted Service of Subpoena on Highpoint Administrative Services, Inc.
USDC of SC (scdce) No. 3:14-cv-03719-CMC
MH Ref 13466.1

left him my business card, asking the Registered Agent to contact me, and he said he would forward it to The Registered Agent.

On **Thursday, July 28, 2016, at 10:45 a.m.,** I arrived at the Witness's place of business (the Registered Address), located at 4455 LBJ Freeway, Suite 1080, Dallas, Texas 75244. I spoke with a white female, approximately 50 to 55 years of age, and asked for the Registered Agent or Amanda Wood, President for the Witness. I was told neither were in the office and I left my business card, asking the Registered Agent to contact me.

On **Friday, July 29, 2016, at 12:08 p.m.,** I arrived at the Registered Address and asked the same white female, as the day before, to see the Registered Agent or Amanda Wood. The woman nodded her head and raised her arms indicating the same answer as before. I asked if she still had my card from the day before and she said she did, I thanked her, and left.

On **Friday, July 29, 2016, at 12:26 p.m.,** I was back at the Registered Agent's Residence. Three Hispanic males were standing outside the property's gate and one being the same man I talked to the day before. He said his last name was Garcia and the Registered Agent was not in. He asked if the Registered Agent made contact with me since he had given him my card. I told him the Registered Agent had not contacted me and expressed my doubts that he would. All three men laughed and I left Mr. Garcia another business card, asking the Registered Agent to contact me.

**Friday, July 29, 2016, at 7:22 p.m.,** I was back at the Registered Agent's address. After three rings of the intercom at the front gate, a woman answered. When I asked for the Registered Agent, the woman told me he was "out-of-town." I told her it was my understanding the Registered Agent had just recently returned from being out-of-town. The woman indicated he was out-of-town again. I told her I was leaving a door hanger attached to the security gate, she agreed, and did so.

**Saturday, July 30, 2016, at 9:36 a.m.,** I was at the Registered Agent's Residence. The door hanger I had taped to the security gate the night before was untouched. There was no answer

Page 2 of 3
Affidavit of Attempted Service of Subpoena on Highpoint Administrative Services, Inc.
USDC of SC (scdce) No. 3:14-cv-03719-CMC
MH Ref 13466.1          *WRZ.*

Comp. App.000036

after three signals at the intercom. I left another door hanger taped to the keypad/intercom control box.

On **Monday, August 1, 2016, at 7:09 a.m.,** I returned to the Registered Agent's Residence. A Hispanic male whom I believe to be Mr. Garcia answered the intercom. When I asked for the Registered Agent, he said the Registered Agent was still out-of-town and he had given all my cards to him. I thanked him and left.

**Monday, August 1, 2016, at 7:32 a.m.,** I went back to the Registered Address. The entrance door was locked so I rang the doorbell for deliveries. A white female, approximately 50 years of age, came to the front door and told me neither the Registered Agent nor Amanda Wood was in at the time. I left that woman another business card, asking the Registered Agent to contact me.

As of this date, the Registered Agent and Amanda Wood, President, has yet to contact me. From experience with this Witness and its officers, I doubt any effort will be made by them to cooperate.

Further, the Affiant saith not.

W. Richard Euler – SCH4905 (Exp. 03/31/2018)

**SUBSCRIBED AND SWORN TO** before me by W. Richard Euler on this the 1st day of August 2016, to attest witness my hand and seal of office.



DEBRA J. BAKER
Notary Public
STATE OF TEXAS
My Comm. Exp. August 20, 2017

Notary Public in and for the State of Texas

Page 3 of 3
Affidavit of Attempted Service of Subpoena on Highpoint Administrative Services, Inc.
USDC of SC (scdce) No. 3:14-cv-03719-CMC
MH Ref 13466.1

## Carroll, Todd

| | |
|---|---|
| **From:** | Biles, Dunham <Dunham.Biles@lewisbrisbois.com> |
| **Sent:** | Tuesday, August 09, 2016 11:36 AM |
| **To:** | Hall, Kevin |
| **Cc:** | Carroll, Todd |
| **Subject:** | RE: Deposition of Highpoint Administrative Services, Inc. |

This week, HP Admin will file its motion to quash, motion for protective order, request for attorneys' fees and sanctions, and brief in support.


**C. Dunham Biles**
Partner
Dunham.Biles@lewisbrisbois.com
**2100 Ross Avenue, Suite 2000**
**Dallas, Texas 75201**

**T: 214.722.7149 F: 214.722.7111**

LewisBrisbois.com 

**Representing clients from coast to coast. View our nationwide locations.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** Hall, Kevin [mailto:Kevin.Hall@wcsr.com]
**Sent:** Monday, August 08, 2016 4:02 PM
**To:** Biles, Dunham
**Cc:** Carroll, Todd
**Subject:** Deposition of Highpoint Administrative Services, Inc.

Dunham:

When we spoke last week, you indicated that you were not certain as to the effectiveness of service of process for the subpoena and deposition notice for Highpoint Administrative Services. You also expressed concerns about the topics enumerated in the deposition notice.

Please find attached a copy of the Certificate of Service from the Texas Secretary of State confirming that service of process has been accomplished. We have re-reviewed the deposition topics in light of our conversation with you, and we believe that the topics are reasonable and appropriate areas of inquiry. We intend to proceed with the deposition on

1

September 7, 2016 at 9:30 AM as indicated in the notice, and we are making travel and court reporter arrangements accordingly.

Does your client intend to appear in accordance with the subpoena or will you be filing a motion for protective order? Please advise and thanks.

Kevin

**KEVIN A. HALL**
ATTORNEY AT LAW

**WOMBLE CARLYLE SANDRIDGE & RICE, LLP**
1727 Hampton Street I Columbia, SC 29201
T 803 454 7710 I F 803 381 9110 I kevin.hall@wcsr.com
Firm Website I My Bio I VCard

CONFIDENTIALITY NOTICE. This electronic mail transmission has been sent by a lawyer. It may contain information that is confidential, privileged, proprietary, or otherwise legally exempt from disclosure. If you are not the intended recipient, you are hereby notified that you are not authorized to read, print, retain, copy or disseminate this message, any part of it, or any attachments. If you have received this message in error, please delete this message and any attachments from your system without reading the content and notify the sender immediately of the inadvertent transmission. There is no intent on the part of the sender to waive any privilege, including the attorney-client privilege, that may attach to this communication. Thank you for your cooperation.

2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company, | ) | CA: 3:14-cv-03719-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **SIXTH AMENDED** |
| Charles David Wood, Jr.; AMS Staff | ) | **SCHEDULING ORDER** |
| Leasing, Inc. d/b/a AMS Staff Leasing | ) | |
| Corporation; Breckenridge Enterprises, Inc. | ) | |
| d/b/a AMS Staff Leasing II; AMS Staff | ) | |
| Leasing II, Inc.; Highpoint Risk Services, | ) | |
| LLC; and Aspen Administrators, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

Pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this District and consistent with deadlines set during a teleconference held July 26, 2016, the following schedule is established for this case.

1.   Except as set forth below, all scheduling order deadlines have expired.

2.   Discovery is extended to **September 14, 2016**, for the limited purpose of completing discovery timely initiated prior to the August 1, 2016 deadline set by the Fifth Amended Scheduling Order. An additional extension is allowed until **September 28, 2016**, for the limited purposes of conducting the depositions of Highpoint Risk Services, Aspen Administrators, Blue Cross and Blue Shield of South Carolina, Ms. Thorne, and Mr. Rhodes. The permitted discovery and specific deadlines are set out in the Joint Discovery Plan filed by the parties (ECF No. 163-1), which is attached to this order. De bene esse depositions must be completed by these discovery deadlines and are limited to depositions noted in the attached Joint Plan. **No motions relating to discovery shall be filed until counsel have consulted and attempted to resolve the matter as required by Local Civil Rule 7.02, and have had a telephone conference with Judge Currie in an attempt to resolve the matter informally.** *See* Fed. R. Civ. P. 16(b)(3)(B)(v).

**See attached Joint Discovery Plan.**

3.     The parties shall complete a reconvened mediation, pursuant to Local Civil Rules 16.04 -
       16.12, on or before **October 7, 2016**. *See* Standing Order to Conduct Mediation 4:00-
       mc-5001, filed December 1, 2000, which sets forth mediation requirements
       (http://www.scd.uscourts.gov). At least twenty-eight (28) days prior to this mediation
       deadline, counsel for each party shall file and serve a statement certifying that counsel
       has: (1) provided the party with a copy of Standing Order 4:00-mc-5001; (2) discussed
       the availability of mediation with the party; and (3) discussed the advisability and timing
       of mediation with opposing counsel. In addition, if mediation has been scheduled,
       counsel shall provide the date and time of the planned mediation.

4.     All motions, except those to complete discovery, those nonwaivable motions made
       pursuant to Fed. R. Civ. P. 12, and those relating to the admissibility of evidence at trial,
       shall be filed on or before **October 28, 2016**. (Fed. R. Civ. P. 16(b)(2)).

5.     No later than **March 8, 2017**, the parties shall file and exchange Fed. R. Civ. P. 26(a)(3)
       pretrial disclosures. Within fourteen (14) days thereafter, a party shall file and exchange
       Fed. R. Civ. P. 26(a)(3) objections, any objections to use of a deposition designated by
       another party and any deposition counter-designations under Fed. R. Civ. P. 32(a)(4).

6.     Motions in limine must be filed by **March 15, 2017**.

7.     Parties shall file pretrial briefs seven (7) days prior to the date set for jury selection (Local
       Civil Rule 26.05).[1] Attorneys shall meet at least seven (7) days prior to the date set for
       submission of pretrial briefs for the purpose of exchanging and marking all exhibits. *See*
       Local Civil Rule 26.07.

8.     This case is set for jury selection on **April 12, 2017**, and trial beginning **May 1, 2017**.
       Trial is anticipated to last three to four weeks.

       The parties' attention is directed to the *Notice of Availability of United States Magistrate
       Judge to Exercise Jurisdiction*. A copy of the form is available in the Clerk's office or at the
       court's internet site at http://www.scd.uscourts.gov.

       IT IS SO ORDERED.

                                        s/Cameron McGowan Currie
                                        CAMERON McGOWAN CURRIE
                                        SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 9, 2016

---

       [1]Judge Currie requires that pretrial briefs be filed with the Clerk of Court as part of the
public record and served on opposing parties.

Case 3:16-cv-03793-GMC-BF   Date Filed 08/19/16   Entry Number 44   Page 1 of 1

## EXHIBIT "A"

| Joint Discovery Plan of Counsel | |
|---|---|
| **Event** | **Deadline** |
| Defendants to identify by Bates or otherwise identify documents cited in exhibits/appendices to the expert reports of Key Coleman and William Spiegel | August 3, 2016 |
| Plaintiff and Defendants to serve written responses and/or objections to discovery requests served on July 1, 2016 | August 5, 2016 |
| Plaintiff and Defendants to make supplemental document productions with respect to pre-July 1 discovery requests | August 5, 2016 |
| Deposition of Jeanne Camp | August 17, 2016 in Houston, TX |
| Deposition of William Spiegel | August 17, 2016 in Dallas, TX |
| Deposition of Key Coleman | August 19, 2016 in Dallas, TX |
| Plaintiff and Defendants to complete, or substantially complete, document productions with respect to all discovery requests | August 24, 2016 |
| Deposition of Highpoint Administrative Services | September 7, 2016 in Dallas, TX[1] |
| Deposition of Charles David Wood, Jr. | September 9, 2016 in Dallas, TX |
| Depositions of Laura Simpson | September 13, 2016 |
| Deposition of Companion | September 14, 2016[2] |
| Defendants to provide confidentiality certifications, pursuant to Confidentiality Order, with respect to confidentiality-designated documents in recent productions and anticipated upcoming productions | September 14, 2016 |
| Deposition of Aspen Administrators | September 16, 2016 in Dallas, TX |
| Deposition of Highpoint Risk Services | September 16, 2016 in Dallas, TX |
| Deposition of Jennifer Thorne | September 26, 2016 in Columbia, SC |
| Deposition of Robert Rhodes | September 27, 2016 in Columbia, SC |
| Deposition of Blue Cross Blue Shield of South Carolina | September 28, 2016 in Columbia, SC |

---

[1] Non-party Highpoint Administrative Services is represented by separate counsel and, to the parties' knowledge, has not consented to the deposition on this date. However, this is the date noticed in the subpoena of Highpoint Administrative Services.

[2] Without limiting their rights under Fed. R. Civ. P. 30(d)(1) and time permitting, Defendants are willing to proceed with the deposition of Companion after the deposition of Laura Simpson on September 13, 2016, reserving their right to complete the deposition of Companion on September 14, 2016, if needed. Companion has asked Defendants to limit these depositions to a total of one day and reserves the right to ask the Court to limit these depositions to one day. The parties will advise the Court if this issue is not resolved.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Companion Property and Casualty Insurance Company, ) ) ) Plaintiff and Counterclaim-Defendant, ) ) v. ) ) Charles David Wood, Jr.; AMS Staff Leasing, ) Inc.; Breckenridge Enterprises, Inc.; AMS Staff ) Leasing II, Inc.; Highpoint Risk Services, LLC; ) and Aspen Administrators, Inc., ) ) Defendants and Counterclaim-Plaintiffs. ) ) ) | Civil Action No. 3:14-cv-03719-CMC

DEFENDANTS' FIRST AMENDED RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES |

Pursuant to Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendants Charles David Wood, Jr., AMS Staff Leasing, Inc., Breckenridge Enterprises, Inc., AMS Staff Leasing II, Inc., Highpoint Risk Services, LLC, and Aspen Administrators, Inc. (collectively, "Defendants"), through counsel, hereby serve their First Amended Responses to Plaintiff's First Set of Interrogatories (the "Interrogatories") to Defendants, as follows:

**I.**

**GENERAL OBJECTIONS**

1.    Defendants object to the Interrogatories to the extent that they seek to impose requirements that are greater than or different from those set forth in the Federal Rules of Civil Procedure or any Order of the Court. In responding to the Interrogatories, Defendants will comply with the Federal Rules of Civil Procedure, but will not undertake obligations beyond those imposed by law.

2.      Defendants object to the Interrogatories to the extent they seek information or documents in violation of the Court's Order on Motions to Dismiss (Dkt. No. 56), the Court's Text Order dated October 22, 2015 (Dkt. No. 85), and the Court's Opinion and Order on Motion for Clarification (Dkt. No. 109) (together the "Stay Orders").

3.      Defendants object to the Interrogatories to the extent that they seek information that is protected or exempt from discovery pursuant to the attorney-client privilege, the work product doctrine, or any other applicable privilege or exemption from discovery.

4.      Defendants' responses shall not be deemed to contain or constitute an admission that any particular document exists, is relevant, or is admissible in evidence or that a statement or characterization in an Interrogatory is accurate or complete.

5.      Defendants' general objections to the Interrogatories shall be deemed continuing and are hereby incorporated into each of the responses to the specific Interrogatories set forth below.

II.

**RESERVATION OF RIGHTS**

1.      Defendants' response to any Interrogatory is not, and shall not be deemed to be or construed as, a waiver of any attorney-client privilege, attorney work-product exemption, or any other applicable privilege, immunity, prohibition, objection or limitation on the part of Defendants with respect to any information.

2.      Defendants reserve the right to supplement, revise, correct, or clarify their objections and responses as may be necessary.

2

3.     Defendants reserve the right to make use of, or introduce at any hearing and/or trial, information responsive to the Interrogatories that may be discovered subsequent to the date of their responses.

### III.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 1:**

Identify each and every entity that has been owned, operated, or controlled, in whole or in part, by Wood since 2004.

**RESPONSE:**

Defendants object to this Interrogatory on the grounds that it is overbroad and requests information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory on the grounds that it seeks confidential and/or proprietary business information regarding Wood's ownership interests and the ownership, operation and/or control of entities that are wholly unrelated to the matters at issue in this action. Subject to and without waiving the foregoing objections, Defendants state that, at certain times since 2004, AMS Staff Leasing, Inc., Breckenridge Enterprises, Inc., AMS Staff Leasing II, Inc. (collectively, the "AMS Entities"), Highpoint Risk Services, LLC, Aspen Administrators, Inc., Dallas National Insurance Company, and DNIC Insurance Holdings, Inc. have been owned, operated, or controlled, in whole or in part, by Wood.

**INTERROGATORY NO. 2:**

Identify each person any Defendant intends to call as a fact witness at any hearing or trial of this matter regarding the allegations contained in Companion's First Amended Complaint, including the substance of each such person's anticipated testimony.

3

**RESPONSE:**

Defendants object to this Interrogatory to the extent it seeks information in violation of the Court's Stay Orders. Defendants further object to this Interrogatory to the extent it seeks the identification of witnesses for any (1) potential "hearing" for which specific witnesses cannot be known at this time or (2) trial, the scope of which cannot be determined at this time. Defendants further object to this Interrogatory because the "substance of each person's anticipated testimony" cannot be determined at this time. Subject to and without waiving the foregoing objections, Defendants state that they may call the following fact witnesses at a hearing or trial of this matter regarding the allegations contained in Companion's First Amended Complaint:

1.      C. David Wood, Jr. may testify regarding, among other things, the formation and operations of the insurance programs at issue, the parties' relationships, and the agreements and policies at issue.

2.      Kristin Wynn may testify regarding, among other things, the insurance programs and policies at issue, amounts provided to or received from Companion, and collateral provided to Companion in connection with the policies at issue, and funds transfers.

3.      Collette Lippincott may testify regarding, among other things, the insurance policies at issue, the amounts provided to or received from Companion and funds transfers.

4.      Jennifer Hauger may testify regarding, among other things, the insurance policies at issue, the administration of the insurance programs at issue, Defendants' relationship with Companion, and the calculation of premium for certain policies.

5.      Jose Babb may testify regarding, among other things, claims payments and claims payment administration with respect to the insurance policies and claims at issue.

4

6.      Lynn Hanson may testify regarding, among other things, the insurance programs at issue and the parties' relationships.

7.      Kara Childress may testify regarding, among other things, the insurance programs and policies at issue, Defendants' relationship with Companion, amounts provided to or received from Companion, collateral provided to Companion in connection with the policies at issue, premium amounts for certain policies, and audits of Highpoint's books and records.

8.      Karen Meredith may testify regarding, among other things, audits of Highpoint's books and records.

9.      Cristen Acevedo may testify regarding, among other things, claims payments and audits conducted by Companion with respect to the insurance policies at issue.

10.     Andrew Price may testify regarding, among other things, the insurance policies at issue, amounts provided to or received from Companion, and claims payments.

11.     Eric Vogelsberg may testify regarding, among other things, amounts provided to or received from Companion, collateral provided to Companion in connection with the policies at issue, management and accounting practices of certain Companion insurance programs.

12.     Jim Foy may testify regarding, among other things, the insurance policies at issue, amounts provided to or received from Companion, and information received from and provided to Companion with respect to the policies at issue.

13.     Chris Nehls may testify regarding, among other things, the formation and operations of the insurance programs at issue and the parties' relationships and the agreements and policies at issue.

Defendants reserve the right not to call certain witnesses, to supplement or amend the anticipated subjects of testimony, and to identify additional witnesses they are likely to call in

5

accordance with Federal Rule of Civil Procedure 26(a)(3), the Third Amended Consent Amended Scheduling Order entered by the Court (Dkt. No. 104), and Local Civil Rule 26.05. Defendants also reserve the right to call at hearing or trial any witness identified by Plaintiff in its First Amended Responses to Rule 26.03 Interrogatories (Dkt. No. 64-2) or in its Initial Disclosure pursuant to Rule Federal Rule of Civil Procedure 26(a), and any witness called by Plaintiff at any hearing or at trial.

**INTERROGATORY NO. 3:**

Identify each and every written contract or agreement that any of the parties to this action entered into that relates in any way to the causes of action set forth in the First Amended Complaint, including but not limited to the 2006 Coverage Agreement (and any extensions thereto), the 2006 Third Party Claims Administration Agreement (and any extensions thereto), and the 2006 Guaranty and Indemnity Agreement (and any extensions thereto).

**RESPONSE:**

Defendants object to this Interrogatory to the extent it seeks information in violation of the Court's Stay Orders. Defendants further object to this Interrogatory on the grounds that "each and every written contract or agreement that any of the parties to this action entered into that relates in any way to the causes of action set forth in the First Amended Complaint" is exceedingly overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory on the grounds that discovery in this action is ongoing and additional contracts or agreements may be identified. Subject to and without waiving the foregoing objections, Defendants identify the following agreements that relate to the non-PayGo causes of action in the First Amended Complaint: (i) the Coverage Agreement dated December 1, 2005, between Companion, Dallas National, AMS, AMS II, AMS Staff Leasing NA, AEI, and EGLI; (ii) the Third Party Claims Administration Agreement dated December 1, 2005, between Dallas National and Companion; (iii) the Guaranty and Indemnity Agreement between Companion and Wood; (iv) the Coverage

6

Agreement dated December 1, 2006, among Companion, Dallas National, AMS, Breckenridge,

AEI, and EGLI, including any extensions or amendments thereto; (v) the Third Party Claims

Administration Agreement dated December 1, 2006, between Companion and Aspen; (vi) the

Guaranty and Indemnity Agreement dated December 1, 2006, between Companion and Wood;

(vii) the Program Agreement dated April 1, 2013, between Companion, Companion TPA, LLC,

and Dallas National; (viii) the insurance policies issued pursuant to the 2005 and 2006

agreements; and (ix) any reinsurance agreements entered into by Companion with respect to any

of the insurance policies issued pursuant to the 2005 and 2006 agreements.

**INTERROGATORY NO. 4:**

Identify each and every written contract or agreement, including the 2006 Third Party
Claims Administration Agreement (and any extensions thereto), authorizing Defendant Aspen to
handle and pay claims made under any "PayGo" policies issued by any Defendant on
Companion paper.

**RESPONSE:**

Defendants object to this Interrogatory to the extent it seeks information in violation of

the Court's Stay Orders.

**INTERROGATORY NO. 5:**

Identify by policy number, date and insured all "Master Policies" underwritten pursuant
to the 2006 Coverage Agreement, and separately by policy number, date and insured all "high
and low deductible workers' compensation and commercial general liability policies of
insurance" underwritten pursuant to the 2006 Coverage Agreement.

**RESPONSE:**

Defendants object to this Interrogatory on the grounds that it is overbroad, unduly

burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to

the discovery of admissible evidence, as there were thousands of commercial general liability

policies of insurance underwritten pursuant to the 2006 Coverage Agreement.  Defendants

further object to this Interrogatory because it seeks information that is already in Companion's

7

possession, custody, or control.   Subject to and without waiving the foregoing objections,

Defendants provide the following information regarding policy numbers, dates, and insureds for

the "Master Policies" underwritten pursuant to the 2006 Coverage Agreement:

| Policy Number | Term | Named Insured |
|---|---|---|
| wc7777999 02 60 | 04/01/07 to 04/01/08 | AMS Staff Leasing |
| wc7777999 03 60 | 04/01/08 to 04/01/09 | AMS Staff Leasing Corporation |
| wc7777999 04 60 | 04/01/09 to 04/01/10 | AMS Staff Leasing Corporation |
| wc7777999 05 60 | 04/01/10 to 04/01/11 | AMS Staff Leasing Corporation |
| DPE262727 40060 | 04/01/11 to 04/01/12 | AMS Staff Leasing Corporation |
| DPE262727 40260 | 04/01/12 to 04/01/13 | AMS Staff Leasing Corporation |
| DPE262727 40360 | 04/01/13 to 04/01/14 | AMS Staff Leasing Corporation |
| WC7777998 01 01 | 01/15/07 to 01/15/08 | AMS Staff Leasing Corporation; SRS II Inc. |
| WC7777998 04 01 | 01/15/08 to 01/15/09 | AMS Staff Leasing Corporation |
| WC7777998 06 01 | 01/15/09 to 01/15/10 | AMS Staff Leasing Corporation |
| WC7777998 07 01 | 01/15/10 to 01/15/11 | AMS Staff Leasing Corporation |
| WC7777998 08 01 | 01/15/11 to 01/15/12 | AMS Staff Leasing Corporation |
| WC7777998 09 01 | 01/15/12 to 01/15/13 | AMS Staff Leasing Corporation |
| WC7777998 12 01 | 01/15/13 to 01/15/14 | AMS Staff Leasing Corporation |
| WC7777995 00 01 | 01/01/08 to 01/01/09 | AMS Staff Leasing IV |
| WC7777995 01 01 | 01/01/09 to 01/01/10 | AMS Staff Leasing IV |
| WC7777995 02 01 | 01/01/10 to 01/01/11 | AMS Staff Leasing IV |
| WC7777995 02 02 | 01/01/11 to 01/01/12 | AMS Staff Leasing IV |
| WC7777995 04 01 | 01/01/12 to 01/01/13 | AMS Staff Leasing IV |
| WC7777995 05 01 | 01/01/13 to 01/01/14 | AMS Staff Leasing IV |

## INTERROGATORY NO. 6:

Describe in detail each and every fact supporting Defendants' assertion that all of the "PayGo" workers' compensation insurance policies issued in 2009 were reinsured by Redwood Reinsurance SPC, Ltd. on the date issued.

## RESPONSE:

Defendants object to this Interrogatory to the extent it seeks information in violation of

the Court's Stay Orders.   Defendants further object to this Interrogatory because it

mischaracterizes certain allegations made by Highpoint Risk Services, LLC in the matter

*Highpoint Risk Services, LLC v. Companion Property & Casualty Insurance Company*, Civil

Comp. App.000050

Action No. 3:14-cv-3398-L, in the United States District Court for the Northern District of Texas.

**INTERROGATORY NO. 7:**

Identify by policy and year all premium collected, premium reported, and the allocation of such premium in connection with the insurance policies at issue.

**RESPONSE:**

Defendants object to this Interrogatory to the extent it seeks information in violation of the Court's Stay Orders. Defendants further object to this Interrogatory because the phrase "the insurance policies at issue" is vague and ambiguous, and potentially involves thousands of insurance policies. Defendants further object to this Interrogatory because the phrase "allocation of such premium" is vague and ambiguous. In addition, Defendants object to this Interrogatory on the grounds that it is overbroad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory because it seeks information that is not within Defendants' possession, custody or control and/or cannot be verified based on information within Defendants' possession custody or control. Subject to and without waiving the foregoing objections, Defendants state that they received the following information from agents or representatives of Dallas National Insurance Company and/or Companion Property and Casualty Insurance Company with respect to premium for the following "Master Policies" for policy years 2005-2012:

| Policy Number | Year | Premium |
|---------------|------|---------|
| wc7777999 | 2005 | $5,956,412 |
| wc7777999 | 2006 | $75,508,792 |
| wc7777999 | 2007 | $49,326,056 |
| wc7777999 | 2008 | $27,942,513 |
| wc7777999 | 2009 | $17,120,851 |
| wc7777999 | 2010 | $7,891,169 |
| DPE262727 | 2011 | $8,261,463 |
| DPE262727 | 2012 | $5,692,685 |

9

| WC7777998 | 2006 | $793,082 |
| WC7777998 | 2007 | $436,934 |
| WC7777998 | 2008 | $928,958 |
| WC7777998 | 2009 | $4,710,556 |
| WC7777998 | 2010 | $7,176,415 |
| WC7777998 | 2011 | $6,994,414 |
| WC7777998 | 2012 | $3,010,248 |
| WC7777995 | 2008 | $167,287 |
| WC7777995 | 2009 | $422,698 |
| WC7777995 | 2010 | $1,069,674 |
| WC7777995 | 2011 | $981,865 |
| WC7777995 | 2012 | $1,864,106 |

Defendants further state that they have identified the following premium amounts for the following Master Policies for policy year 2013, and that Defendants' productions contain documents from which information responsive to this request may be obtained:

| Policy Number | Year | Premium |
| --- | --- | --- |
| DPE262727 | 2013 | $6,035,643 |
| WC7777998 | 2013 | $984,725 |
| WC7777995 | 2013 | $3,130,705 |

### INTERROGATORY NO. 8:

Describe in detail all facts relating to the business relationship, contractual or otherwise, if any, between Companion and Highpoint.

### RESPONSE:

Defendants object to this Interrogatory to the extent it seeks information in violation of the Court's Stay Orders. Defendants further object to this Interrogatory because the phrase "all facts relating to the business relationship" vague, ambiguous, overbroad, unduly burdensome, and not limited in time or scope. Subject to and without waiving the foregoing objections, Defendants state that Highpoint served as Companion's agent with respect to certain insurance policies that were underwritten and issued pursuant to the 2005 Coverage Agreement and the 2006 Coverage Agreement and that such insurance policies were separate from the "PayGo

10

Program." On or about July 2, 2013, Companion instructed Highpoint to cease all origination, enrollment or other production activities associated with insurance policies issued by Companion and terminated its business relationship with Highpoint.

**INTERROGATORY NO. 9:**

Identify the Documents in Defendants' possession, custody, or control necessary and/or relevant to an accounting of the insurance business at issue in this litigation.

**RESPONSE:**

Defendants object to this Interrogatory to the extent it seeks information in violation of the Court's Stay Orders. Defendants further object to this Interrogatory on the grounds that the phrase "the insurance business at issue in this litigation" is vague and ambiguous, and potentially involves thousands of insurance policies. Subject to and without waiving the foregoing objections, Defendants state that the following documents may be relevant to an accounting of the insurance business at issue, as Defendants understand it: (i) the 2005 Coverage Agreement and the 2006 Coverage Agreement; (ii) the master workers' compensation insurance policies that were underwritten and issued pursuant to the 2005 Coverage Agreement and 2006 Coverage Agreement (the "Policies") that are in Defendants' possession, custody or control; (iii) payroll data for the Policies; (iv) wire transfer receipts and bank statements reflecting collateral deposits for the Policies; (v) policy documentation; (vi) periodic reports relating to the Policies, including, actuarial reports; (vii) wire transfer receipts and bank statements reflecting claims payments; (viii) documents relating to policy and/or claims audits; and (ix) emails and other communications relating to the Policies.

**INTERROGATORY NO. 10:**

Describe in detail the Defendants' role in the commencement and prosecution of the 2012 Nevada litigation referenced in Defendants' Reply brief in support of their motion to dismiss the First Amended Complaint for failure to state a claim.

11

**RESPONSE:**

Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory because "the 2012 Nevada litigation referenced in Defendants' Reply brief" was not prosecuted by Defendants; it was prosecuted by Companion.

**INTERROGATORY NO. 11:**

Identify by policy, date and insured the deposits Highpoint and/or any other Defendant has collected from Companion's insureds since 2005, and identify when and what portion of each such deposit was transferred to any other entity or retained by any Defendant.

**RESPONSE:**

Defendants object to this Interrogatory to the extent it seeks information in violation of the Court's Stay Orders. Defendants further object to this Interrogatory because the terms "deposits" and "Companion's insureds" are vague and ambiguous, and potentially implicate thousands of persons and/or entities.

**INTERROGATORY NO. 12:**

If Wood has ever been convicted of a felony, or any crime involving moral turpitude or dishonesty, or is or has been involved as a plaintiff or defendant in any civil, domestic relations, or other court or administrative proceeding, please state the date the charges were made or the proceedings commenced, the nature of the matter, the parties, the attorneys, and the resolution.

**RESPONSE:**

Defendants object to this Interrogatory on the grounds that it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving the foregoing objections, Defendants state that Mr. Wood has never been convicted of a felony or any crime involving moral turpitude or dishonesty.

**INTERROGATORY NO. 13:**

Identify the factual basis for any counterclaims or cross-claims any Defendant may have against Companion.

12

**RESPONSE:**

The factual bases for Defendants' counterclaims are set forth in detail in Defendants'
First Amended Answer and Counterclaims (Dkt. No. 90), and Defendants' First Amended
Responses to Rule 26.03 Interrogatories (Dkt. No. 64-2), which are hereby incorporated by
reference. The factual bases for Highpoint's claims against Companion are set forth in detail in
the First Amended Complaint filed in the matter *Highpoint Risk Services, LLC, et al. v.
Companion Property and Casualty Insurance Company*, Civil Action No. 3:14-cv-3398-L, in the
United States District Court for the Northern District of Texas.

**INTERROGATORY NO. 14:**

Identify all persons who are or have been since 2004 a director or officer of each
respective corporate Defendant, as well as any partners, general partners, limited partners,
department/division heads or managers, outside accountants, attorneys, or agents, and for each
such person.

**RESPONSE:**

Defendants object to this Interrogatory on the grounds that it seeks information that is
neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.
Defendants further object to this Interrogatory because the term "agents" is vague and
ambiguous, and potentially includes dozens of persons who are wholly unrelated to the matters at
issue in this action. Subject to and without waiving the foregoing objections, Defendants state
that C. David Wood, Jr. has been an officer or director of AMS Staff Leasing, Inc., Breckenridge
Enterprises, Inc., AMS Staff Leasing II, Inc., Highpoint Risk Services, LLC, and Aspen
Administrators, Inc. since 2004. Rusty Byrd and Jennifer Hauger have also been officers of
Highpoint Risk Services, LLC, and Lynn Hanson has also been an officer of Breckenridge
Enterprises, Inc. Meredith & Associates was the outside accountant for each corporate
Defendant from 2004-2014.

13

**INTERROGATORY NO. 15:**

Identify all persons having an ownership stake in each respective Defendant entity, the dates of such ownership by each person, and the percentage of ownership by each such person, including without limitation, investors, joint developers or other business partners, and if stock has been issued by the Defendant entity, the identity of each stockholder and the amount and type of stock owned by each stockholder.

**RESPONSE:**

Defendants object to this Interrogatory on the grounds that it seeks information that is

neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, Defendants state that C. David Wood

Jr. directly or indirectly holds one hundred percent of the ownership interests in AMS Staff

Leasing, Inc., Breckenridge Enterprises, Inc., AMS Staff Leasing II, Inc., Highpoint Risk

Services, LLC, and Aspen Administrators, Inc.

Dated: April 28, 2016

Respectfully submitted,

Richard C. Detwiler (Fed. ID No. 510)
CALLISON TIGHE & ROBINSON, LLC
1812 Lincoln Street, Suite 200
Post Office Box 1390
Columbia, South Carolina 29202-1390
Tel.: (803) 404-6900
Email: RickDetwiler@CallisonTighe.com

Michael S. Gardner (*pro hac vice*)
Eric P. Haas (*pro hac vice*)
GARDNER HAAS PLLC
2828 Routh Street
Suite 660
Dallas, Texas 75201
Tel.: (214) 415-3473
Email: mg@gardnerhaas.com
Email: eh@gardnerhaas.com

**ATTORNEYS FOR DEFENDANTS**

14

## CERTIFICATE OF SERVICE

I hereby certify that, on this 28th day of April, 2016, I have served the below parties in

this action with a copy of the document specified below by e-mail to the following addresses:

Document:                Defendants' First Amended Responses to Plaintiff's First Set of Interrogatories

Parties Served:        Kevin A. Hall
M. Todd Carroll
WOMBLE CARLYLE SANDRIDGE & RICE, LLP
1727 Hampton Street
Columbia, South Carolina 29201
kevin.hall@wcsr.com
todd.carroll@wcsr.com

Harry Lee
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
*hlee@steptoe.com*

Eric P. Haas

Comp. App.000057

## VERIFICATION

I, Kristin Wynn, hereby declare under penalty of perjury that the factual statements in Defendants' First Amended Responses to Plaintiff's First Set of Interrogatories dated April 28 2016, unless otherwise qualified, are true and correct based on information reasonably available to Defendants.

Date: April 28 2016

Kristin Wynn



July 9, 2016

<u>VIA E-MAIL</u>

Harry Lee, Esq.
Steptoe & Johnson LLP
1330 Connecticut Avenue, NW
Washington DC 20036

    Re: *Companion Property & Casualty Insurance Company v. C. David Wood, et al.,*
       No. 3:14-CV-3719 (D.S.C.)

Dear Harry:

  During the telephonic conference held on June 9, 2016, the Court instructed Defendants to produce documents responsive to Plaintiffs' Second Set of Requests for Production Nos. 18-20. Defendants have produced documents responsive to Plaintiff's Second Set of Requests for Production Nos. 18-20 (*see* D_00000068-69, D_00004467-68, D_00012021, D_00012360-61, D_00019482-590, D_00019701-03, D_00020775-80, and payroll data produced herewith via FTP link).

  In addition, the Court instructed Defendants to identify documents created by employees of Highpoint Administrative Services, Inc. since the inception of the litigation that have been produced by Defendants. Please see the attached list identifying documents that Defendants have produced that were created by employees of Highpoint Administrative Services, Inc. since the inception of this litigation.

        Sincerely,

        *Kerry A. Rigas*

        Kerry A. Rigas

cc:  Conor P. Brady, Esq.
   M. Todd Carroll, Esq.
   Kevin Hall, Esq.
   Richard C. Detwiler, Esq.
   Louis Lang, Esq.

Comp. App. 000059

# GH | GARDNER HAAS

| | | |
|---|---|---|
| D_00000188 | D_00015544 | D_00019987 |
| D_00000216 | D_00015547 | D_00019989 |
| D_00003981 | D_00015548 | D_00019991 |
| D_00003982 | D_00016287 | D_00019992 |
| D_00004684 | D_00017602 | D_00019993 |
| D_00010878 | D_00017606 | D_00019995 |
| D_00010879 | D_00019669 | D_00019997 |
| D_00010880 | D_00019674 | D_00019999 |
| D_00010881 | D_00019700 | D_00020001 |
| D_00010882 | D_00019701 | D_00020003 |
| D_00010883 | D_00019702 | D_00020004 |
| D_00010885 | D_00019703 | D_00020005 |
| D_00010887 | D_00019731 | D_00020007 |
| D_00010888 | D_00019902 | D_00020012 |
| D_00010889 | D_00019903 | D_00020013 |
| D_00010890 | D_00019904 | D_00020814 |
| D_00010891 | D_00019906 | D_00020816 |
| D_00010892 | D_00019907 | D_00131228 |
| D_00010893 | D_00019908 | D_00131229 |
| D_00010894 | D_00019965 | D_00131230 |
| D_00010896 | D_00019966 | |
| D_00010898 | D_00019967 | |
| D_00010900 | D_00019968 | |
| D_00010903 | D_00019970 | |
| D_00010904 | D_00019971 | |
| D_00010913 | D_00019972 | |
| D_00010915 | D_00019974 | |
| D_00010916 | D_00019975 | |
| D_00010917 | D_00019976 | |
| D_00010918 | D_00019978 | |
| D_00010919 | D_00019979 | |
| D_00013543 | D_00019981 | |
| D_00013690 | D_00019982 | |
| D_00015411 | D_00019984 | |
| D_00015516 | D_00019986 | |

Comp. App.000060

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company, | ) | Civil Action No. 3:14-cv-03719-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DECLARATION OF KRISTIN WYNN |
| | ) | |
| Charles David Wood, Jr., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

1.      My name is Kristin Wynn, and I submit this declaration on behalf of Defendants AMS Staff Leasing, Inc. d/b/a AMS Staff Leasing Corporation, Breckenridge Enterprises, Inc. d/b/a AMS Staff Leasing II, AMS Staff Leasing II, Inc., Highpoint Risk Services, LLC, and Aspen Administrators, Inc. (collectively, "Defendants") in the above-captioned action.

2.      Between 2006 and 2008, Defendants utilized a shared email system and computer network. During that time, Defendants experienced three major network computer crashes, each causing significant, although differing, levels of email and other data loss.  The network computer crash that occurred in 2007 was the most severe of the three crashes, causing a widespread, unintentional loss of emails and other electronically stored files and data.  As a result of the network crashes, Defendants lost a substantial amount of the emails and electronically stored data that had existed on their servers prior to that time.

3.      I am not an IT professional. Regrettably, the person in charge of IT systems for Defendants in the 2006-2008 time period, Josy Irokwe, passed away in 2010. Nonetheless, it is my understanding that the age and configuration of the servers caused or contributed to the

network crashes that occurred between 2006 and 2008. I understand that Defendants were using older servers at that time that may not have been able to handle the required volume of data.

4.      I understand that, around the time of the network crashes that occurred between 2006 and 2008, Defendants' IT staff attempted to recover from the backup system that was in place at that time the emails and other electronic data that had been lost from Defendants' computer system. I understand that Defendants' IT staff was unable to recover the emails and other electronic data that was lost from the backup system at that time.

5.      I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Dated: July 9, 2016

Kristin Wynn

1

2

UNEDITED TRANSCRIPTION DISCLAIMER - ROUGH DRAFT
COMPANION VS WOOD - DEPOSITION OF A. KEY F. COLEMAN

3

4    The following transcript of proceedings, or

5 any portion thereof, in the above-entitled matter, taken

6 on any date is being delivered UNEDITED and UNCERTIFIED

7 by the certified court reporter.

8    The purchaser agrees not to disclose this

9 unedited transcription in any form (written or

10 electronic) to anyone who has no connection to this

11 case.  This is an unofficial transcription which should

12 NOT be relied upon for purposes of verbatim citation of

13 testimony.  This transcription has not been checked,

14 proofread, or corrected.  It is a draft transcript, NOT

15 a certified transcript.  As such, it may contain

16 computer-generated mistranslations of stenotype code or

17 electronic transmission errors, resulting in inaccurate

18 of nonsensical work combinations, or untranslated

19 stenotype symbols which cannot be deciphered by

20 non-stenotypists.  Corrections will be made in the

21 preparation of the certified transcription, resulting in

22 differences in content, page and line numbers,

23 punctuation and formatting.  This unedited transcript

24 contains no appearance page, certificate page, index, or

25 certification.

1      Q.    But you were provided documents pursuant to

2    this engagement, correct?

3      A.    Yes.

4      Q.    Other than the documents, were you provided

5    any facts outside of the documents?

6      A.    I have talked to several people to obtain

7    information relating to how the programs worked.

8      Q.    Who did you talk to?

9      A.    I talked to Jennifer Hauger, Kristin Wynn,

10   Kara Childress, and Dave Wood.

11     Q.    And when did you speak with him.

12     A.    Before I issued my report, probably --

13   probably all in June, but possibly before then, but

14   probably in June.

15     Q.    Your report is dated June 22 --

16     A.    Right.

17     Q.    -- 2016 does that help you as to whether it

18   occurred in June or whether it occurred before that?

19     A.    I would think it probably occurred in June,

20   but some of it could have occurred in May.

21     Q.    Other than Ms. Hauger, Ms. Wynn, Ms. Childress

22   and Mr. Wood did you speak with anyone else to receive

23   facts about the case.

24     A.    I don't recall speaking with anyone else, but

25   to the extent there may be someone else referenced in my

```
 1        A.    If I simply didn't need them, I might have
 2   thrown them away.
 3        Q.    Who did you understand that these four people
 4   were employed by?
 5              MR. HAAS:   Objection, form.
 6        A.    Employed by in the past or employed by
 7   currently?
 8        Q.    Currently.
 9        A.    Jennifer Hauger and Kristin Wynn, my
10   understanding, is that they work currently for the AMS
11   organization, and Kara Childress, I understand she used
12   to work for Dallas National, and Mr. Wood, I understand
13   he is an owner of AMS entities.
14        Q.    And with -- with respect to Ms. Childress you
15   said where she used to work, what's your understanding
16   of where she currently works?
17        A.    I believe she's a consultant now.
18        Q.    For who?
19        A.    Either for a small consulting firm or for
20   herself.
21        Q.    And do you understand that she's consulting to
22   AMS as a result?
23        A.    I -- she may -- I don't know how she is
24   engaged in particular.
25        Q.    But based upon your conversations with her,
```

```
 1    she's -- she was doing work to assist AMS and you,

 2    correct?

 3         A.   She was.

 4         Q.   Other than the four people we just talked

 5    about, is there anybody else that you worked with on

 6    this engagement, and I'm not talking about counsel?

 7         A.   There are people in my organization I worked

 8    with.

 9         Q.   Okay.  Before we get to that, anybody else

10    who's not in your organization?

11         A.   Nobody that comes to mind.

12         Q.   Okay.  Let's start within your organization,

13    who else has worked on this engagement?

14         A.   A senior associate in our practice named

15    Taylor Rosanova.

16         Q.   And what was her role?

17         A.   It's a he.

18         Q.   I apologize, what was his role?

19         A.   He supported me in developing my report.

20         Q.   When you say supporting you, what do you mean?

21         A.   He helped with pulling documentation together,

22    producing spreadsheets, and checking spreadsheets, and

23    he helped pull together support for my report.

24         Q.   What -- you said pulling together

25    documentation, what are you referring to?
```

To:        Dave Wood[davewoodtx@aol.com]
From:      Kristin J. Wynn
Sent:      Mon 4/16/2012 5:29:24 PM
Importance:          Normal
Subject:   FW: Wire Reimbursement
Received:  Mon 4/16/2012 5:37:56 PM

Fyi

When you see the cash move it is simply a reimbursement.

**From:** Collette Lippincott
**Sent:** Monday, April 16, 2012 12:13 PM
**To:** Kristin J. Wynn
**Subject:** Wire Reimbursement

Hi Kristin,

HPRS owes HP Admin for the $4,717,520.26 wire we sent to DNIC on their behalf 3/28/12. HPRS now has more than enough funds to reimburse HP Admin for the wire. Would you like me to make that reimbursement transfer today?

Thanks,

*Collette Lippincott*

Comp. App.000067



5501 Lyndon B. Johnson Freeway, Suite 1200

Dallas, Texas 75240

(972) 404-1615 ext. *1297

(972) 960-8670 - Fax

collette@hpadmin.com

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company, | ) ) ) | Civil Action No. 3:14-cv-03719-CMC |
| Plaintiff, | ) ) | |
| vs. | ) ) | DECLARATION OF KRISTIN WYNN |
| Charles David Wood, Jr., et al., | ) ) | |
| Defendants. | ) ) | |

1.     My name is Kristin Wynn, and I submit this declaration on behalf of Defendant AMS Staff Leasing, Inc. ("AMS").

2.     In this action, AMS seeks damages from Companion Property and Casualty Insurance Company ("Companion") caused by Companion's failure to pay workers' compensation insurance claims under Companion policies that exceeded the applicable deductible, and Companion's failure to reimburse AMS for payments made by AMS to satisfy workers' compensation claims in excess of the applicable deductible under certain Companion workers' compensation policies. First Amended Answer and Counterclaims ¶¶ 255-257.

3.     Under the workers' compensation policies issued by Companion to AMS, Companion was responsible for paying claims in excess of the applicable deductible. Between December 2005 and October 2013, however, claims payments that exceeded the deductible under those policies were paid from an account funded by AMS. AMS's expert, Key Coleman, has determined that AMS paid $13,118,667 in above-deductible claims payments for claims arising under the workers' compensation policies issued by Companion to AMS. Expert Report of Key Coleman, CPA, CFA, CPCU, Are, dated June 22, 2013, at 7-8.

4.     AMS has not been repaid or reimbursed for the full amount of the above-deductible claims payments that were taken from AMS funded accounts.  Through a process that was handled by Dallas National Insurance Company ("Dallas National"), separate from AMS, credit for a portion of the above-deductible claims payments was provided to AMS over time in a "funds held" (*i.e.*, collateral) general ledger account at Dallas National.  In discovery, AMS has received a copy of a spreadsheet that Dallas National's former CFO, Eric Vogelsberg, provided to Jay Cogswell of Companion on February 6, 2014, which purports to show $11,292,522.33 in credit for above-deductible claims payments to the "AMS Funds Held"/"Payable to AMS" account on the Dallas National general ledger as of June 30, 2013.  The spreadsheet, which identifies the dates of purported Dallas National journal entries and the amount of each entry, was part of a document counsel for Companion marked as Exhibit 18 to the deposition of Eric Vogelsberg, taken on May 3, 2016.  AMS has not been able to determine whether all of the Dallas National journal entry amounts reflected in that spreadsheet are true and correct because AMS does not have access to Dallas National's general ledger.  During his deposition on May 3, 2016, Mr. Vogelsberg confirmed that AMS did not have access to Dallas National's general ledger and that AMS did not have access to Dallas National's internal "funds held" calculations:

> Q.     Did AMS have access to the Dallas National general journal?
>
> MR. LEE: Objection to form.
>
> A.     Did AMS have access to the Dallas National general journal?  No, they would not have.
>
> Q.     Did AMS have access to Dallas National's internal funds held calculations?
>
> MR. LEE: Objection to form.
>
> A.     Dallas National's internal funds held calculations?  I don't believe.

> Q.   Okay.  Same with respect to Highpoint?  Highpoint didn't have access to Dallas National's journal and computer systems?
>
> A.   No, they would no[t] [have] access to the GL system.

Deposition of Eric Vogelsberg (May 3, 2016) at 253.

5.     Further, Mr. Vogelsberg could not attest to the accuracy of the spreadsheet that he provided on February 6, 2014, which purportedly showed all credits or reimbursements to the funds held account at Dallas National for AMS above-deductible claims payments:

> Q.   Did you do anything at the time these spreadsheets were prepared to go back and verify whether the data that Mr. Yarbrough pulled and put together in these spreadsheets is 100 percent accurate?
>
> A.   No, I do not vouch for those numbers.

Deposition of Eric Vogelsberg (May 3, 2016) at 252.

6.     Finally, Mr. Vogelsberg could not identify any reimbursements provided to AMS for any above-deductible claims payments paid after June 30, 2013:

> Q.   As you sit here today . . . do you have any knowledge as to whether AMS has been reimbursed for above the deductible claims payments paid after June 30, 2013?
>
> MR. LEE:  Objection to form.
>
> A.   I have no personal knowledge of that.

Deposition of Eric Vogelsberg (May 3, 2016) at 255.

7.     Without being able to verify whether all of the Dallas National journal entries shown in the spreadsheet that Mr. Vogelsberg provided to Companion on February 6, 2014, are true and correct, AMS cannot confirm whether AMS actually received credit in the Dallas National general ledger for $11,292,522.33 of above-deductible claims payments.

I declare under penalty of perjury that, unless otherwise qualified, the foregoing statements are true and correct based on information reasonably available to AMS.

Dated: June 23, 2016

Kristin Wynn

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

Companion Property and Casualty   )   Civil Action No. 3:14-cv-03719-CMC
Insurance Company,   )
　　　　　　　　　　　　　　　   )
　　　　　　　　　　Plaintiff,   )
　　　　　　　　　　　　　　　   )
　　　　　vs.   )
　　　　　　　　　　　　　　　   )
Charles David Wood, Jr., *et al.,*   )
　　　　　　　　　　　　　　　   )
　　　　　　　　　　Defendants.   )
　　　　　　　　　　　　　　　   )
_____   )

## DECLARATION OF KRISTIN WYNN

I, Kristin Wynn, do solemnly swear as follows:

1.　　I am over 21 years of age, of sound mind, have never been convicted of a felony or a crime involving moral turpitude, and am fully competent to testify regarding the matters described herein. I am a Texas citizen and resident of Dallas, Texas.

2.　　I am the controller of Highpoint Risk Services, LLC ("Highpoint"). Between October 2010 and July 2013, I was responsible for, among other things, managing cash transfers and claims payment reimbursements with respect to the workers' compensation insurance policies written for Companion Property and Casualty Insurance Company ("Companion") under the PayGo Program. As such, I have personal knowledge regarding the matters set forth herein.

3.　　The PayGo Program was a separate insurance program with Companion under which specific workers' compensation and employer's liability insurance policies were issued by Highpoint on behalf of Companion to third parties (*i.e.*, persons and entities not affiliated with Companion, Highpoint, or Charles David Wood, Jr.) and

reinsured by Redwood Reinsurance SPC, Ltd. ("Redwood") pursuant to a Workers' Compensation and Employer's Liability Quota Share Reinsurance Agreement between Companion and Redwood.

4.  Unlike other workers' compensation insurance programs, policyholders in the PayGo Program had the option of paying premium on monthly basis (in other words, "pay-as-you-go"). The majority of policyholders in the PayGo Program selected the "Monthly Reporter" payment option, pursuant to which monthly premiums were calculated and paid based on a policyholder's reported payroll each month. But certain policyholders elected to pay the premium on their PayGo Program policy in monthly installments.

5.  In connection with the PayGo Program, I oversaw the disbursement of claims payments for injured workers and the payment of fees and other amounts to Companion. I was also responsible for preparing and reviewing summary reports regarding the PayGo Program. Between October 2010 and July 2013, Highpoint advanced over $100 million in individual claims payments on behalf of Companion in connection with the PayGo Program.

6.  Companion has failed to reimburse Highpoint for approximately $38 million in claims payments made on behalf of Companion under the PayGo Program. As a result, Highpoint seeks to recover damages from Companion in connection with the PayGo Program in the matter *Highpoint Risk Services LLC and Aspen Administrators, Inc. v. Companion Property and Casualty Insurance Company*, No. 3:14-cv-3398, in the United States District Court for the Northern District of Texas (the "Texas Action").

7.      Policy number CPCA15470 was a policy in the PayGo Program issued to West Coast Steel & Processing LLC.  Attached hereto as Exhibit A is a true and correct copy of a signed Policy Information Page for policy number CPCA15470, which shows that West Coast Steel & Processing LLC elected the PayGo Program premium payment option of zero down and 12 monthly installments.  In the Texas Action, Highpoint seeks to recover $1,066.67 for a payment made to satisfy a PayGo Program workers' compensation claim arising under policy number CPCA15470 in or around May 2013.

8.      Policy number CPCA13908 was a policy in the PayGo Program issued to Western States Oil Co., Inc.  Attached hereto as Exhibit B is a true and correct copy of a signed Policy Information Page for policy number CPCA13908, pursuant to which the premium for policy number CPCA13908 was to be paid in monthly installments.   In the Texas Action, Highpoint seeks to recover $223.33 for payments made satisfy a PayGo Program workers' compensation claim arising under policy number CPCA13908 in or around April 2013.

9.      Policy number CPMU14938 was a policy in the PayGo Program issued to Advantage Labor, Inc.

10.     Attached hereto as Exhibit C is a true and correct copy of a premium report that was prepared for the Companion PayGo Program for July 2012, which identifies PayGo Program policies by policy number and shows premium for policy numbers CPCA13908 (highlighted on page 10), CPCA15470 (highlighted on page 28), and CPMU14938 (highlighted on page 33), among other PayGo Program policies.

11.     Attached hereto as Exhibit D is a true and correct copy of a premium report that was prepared for the Companion PayGo Program, which identifies PayGo

Comp. App.000076

Program policies by policy number and shows premium for policy numbers CPCA13908

(highlighted on page 36), CPCA15470 (highlighted on page 64), and CPMU14938

(highlighted on page 85), among other PayGo Program policies.

12.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct to the best of my knowledge and belief.


Executed on March 4, 2016


Kristin Wynn

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company, | ) ) ) | Civil Action No. 3:14-cv-03719-CMC |
| Plaintiff, | ) ) | |
| vs. | ) ) | DECLARATION OF KRISTIN WYNN IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE ORDER |
| Charles David Wood, Jr., et al., | ) ) | |
| Defendants. | ) ) ) | |

1.     My name is Kristin Wynn. I am fully competent to make this declaration and the facts stated herein are within my personal knowledge.

2.     During the period 2002 to 2010, I was employed by AMS Professional Staffing and served as controller of AMS Staff Leasing, Inc. ("AMS") and other entities. In 2010, my employment was transferred to Highpoint Administrative Services, Inc. ("HPAS"), an administrative services company that has provided payroll and other services for AMS and other entities. While employed by HPAS, I have continued to perform work for AMS.

3.     At certain times, I have communicated with AMS's legal counsel regarding matters on which AMS has sought legal advice and/or representation. When communicating with AMS's legal counsel about such matters, I understood that I was acting as an agent or representative AMS, and I understood that such communications were privileged.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: June 7, 2016

_____
Kristin Wynn

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Companion Property and Casualty Insurance Company, | ) | Civil Action No. 3:14-cv-03719-CMC |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DECLARATION OF JENNIFER** |
| vs. | ) | **HAUGER IN SUPPORT OF** |
| | ) | **DEFENDANT'S MOTION FOR** |
| Charles David Wood, Jr., et al., | ) | **PROTECTIVE ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

1.      My name is Jennifer Hauger. I am fully competent to make this declaration and the facts stated herein are within my personal knowledge.

2.      During the period 1999 to 2010, I was employed by AMS Professional Staffing and performed services for AMS Staff Leasing, Inc. ("AMS") and other entities. In or around 2010, my employment was transferred to Highpoint Administrative Services, Inc. ("HPAS"), an administrative services company that has provided payroll and other services for AMS and other entities. While employed by HPAS, I have continued to perform work for AMS.

3.      At certain times, I have communicated with AMS's legal counsel regarding matters on which AMS has sought legal advice and/or representation. When communicating with AMS's legal counsel about such matters, I understood that I was acting as an agent or representative AMS, and I understood that such communications were privileged.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: June 7, 2016

Jennifer Hauger

Jennifer Hauger - 5/6/2016

1

```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF SOUTH CAROLINA
                   COLUMBIA DIVISION

COMPANION PROPERTY AND        )
CASUALTY INSURANCE            )
COMPANY,                      )
                             )
                             )
Plaintiff and                )
Counterclaim-Defendant,       )
                             )
VS.                          ) Civil Action No.
                             ) 3:14-cv-03719-CMC
CHARLES DAVID WOOD, JR.,      )
ET AL,                       )
                             )
                             )
Defendants and               )
Counterclaim-Plaintiffs.     )
```

*********************************************************

                    ORAL DEPOSITION OF

                     JENNIFER HAUGER

                       May 6, 2016

*********************************************************

     ORAL DEPOSITION OF JENNIFER HAUGER, produced as a

witness at the instance of the Plaintiff, and duly

sworn, was taken in the above-styled and -numbered cause

on the 6th day of May, 2016, from 4:55 p.m. to 6:50

p.m., before Brynna McGee, CSR in and for the State of

Texas, reported by machine shorthand, at the offices of

Munsch, Hardt, Kopf & Harr, P.C., 500 North Akard

Street, Suite 3800, Dallas, Texas, pursuant to the

Federal Rules of Civil Procedure.

Comp. App.000080

Jennifer Hauger - 5/6/2016

6

```
 1        A.   Not that I know of.

 2        Q.   Okay.  Can you state your full name for the

 3   record.

 4        A.   Jennifer Jeanette Hauger.

 5        Q.   And what the your date of birth?

 6        A.   10/5/1973.

 7        Q.   And what's your current business and home

 8   addresses?

 9        A.   Business address is 4455 LBJ Freeway,

10   Suite 1080, Dallas, Texas, 75244.  Home address is 136

11   Redbud Drive, Forney, Texas, 75126.

12        Q.   And what's the business you work at?

13        A.   Highpoint Administrative Services.

14        Q.   What does Highpoint Administrative Services do?

15        A.   It provides administrative services to our

16   clients.

17        Q.   Okay.  Is one of the clients Mr. Wood?

18        A.   Mr. Wood?

19             MR. HAAS:  Objection, form, scope.

20        Q.   Yes.

21        A.   You would have to be more specific.

22        Q.   Why?

23        A.   Because --

24             MR. HAAS:  Objection, scope.

25        A.   Because Mr. Wood's a person.
```

Comp. App.000081

Jennifer Hauger - 5/6/2016

10

1    competitor claiming that AMS had its client list.

2         Q.   Okay.   Who was the plaintiff in that case?

3         A.   I don't remember the company's name.

4         Q.   Okay.   When, about, was that action or your

5    testimony?

6         A.   I would say early to mid-2000s.

7         Q.   Okay.   By reference to the deposition notice

8    that you've got in front of you, in -- you tell me, to

9    your understanding, which topics you're here to testify

10   about on behalf of AMS.

11        A.   The topic 3.

12        Q.   Okay.

13        A.   Topic 11, topic 12, topic 13, and topic 15.

14        Q.   Have you read the pleadings in this case, the

15   Second Amended Complaint, the First Amended Answer and

16   Counterclaims, and the Answer to the Amended

17   Counterclaims?

18        A.   I've read some documents.   I'm not sure what

19   they would be titled.

20        Q.   Okay.   Were they documents that looked like

21   court documents with a heading at the top and so forth?

22        A.   Yes.

23        Q.   Okay.   Do you have a basic understanding at all

24   of the claims made by each of the sides in this case?

25        A.   Some of them.

Comp. App.000082

Jennifer Hauger - 5/6/2016

38

```
 1        A.   No, it was not.
 2        Q.   Was it by phone?
 3        A.   Yes, it was.
 4        Q.   And how did the conversation start?  Who called
 5   who?
 6        A.   I could not remember.
 7        Q.   Okay.  How is it that -- well, what was the
 8   first thing that was said to each other between you and
 9   Mr. Wood?
10        A.   I do not recall.
11        Q.   Do you recall anything about the conversation?
12        A.   Other than stating what the numbers were in
13   comparison to the tax numbers.
14        Q.   Okay.  When you say tax numbers, what do you
15   mean?
16        A.   What the payroll numbers were, according to the
17   payroll tax filings.
18        Q.   Okay.  Is there a reason that you calculated
19   manual premium as opposed to some other type of premium?
20        A.   That's how I've always gone through my process.
21        Q.   For calculating final premium?
22        A.   Correct.  Typically, your written premium or
23   your paid premium is a percent of manual.
24        Q.   Were there any discussions about the process
25   where you made any choices in your calculation to do it
```

Jennifer Hauger - 5/6/2016

```
 1   this way or that way or to include this information and
 2   not that information?  Because I don't -- don't know
 3   what you did.  I just want to know whether you decided
 4   to use certain information or not information.  Were
 5   there any forks in the road in your process?
 6                 MR. HAAS:  Ms. Hauger, to the extent your
 7   process was done in consultation with counsel or at the
 8   direction of counsel, I'm going to instruct you not to
 9   answer on the grounds of attorney-client privilege.
10                 MR. LEE:  Was that a qualified instruction
11   or an absolute instruction?  I heard the very beginning,
12   and I apologize that you said something like, "to the
13   extent"?  Did I miss that?
14                 MR. HAAS:  No, you did not miss that fact.
15   Her -- I will state that I object to the question
16   because the process was performed at the direction of
17   counsel, and thus the question does invade on the
18   attorney-client privilege.
19                 MR. LEE:  Okay.  I believe that she's -- in
20   her answer, has already waived that privilege to the
21   extent that there is any privilege.  But I respect that
22   you've instructed her not to answer.  We will keep the
23   deposition open and observe the right to keep going with
24   respect to this in light of the instruction.  But I'll
25   also ask some more questions.
```

Jennifer Hauger - 5/6/2016

41

```
 1                MR. HAAS:  Objection, form.
 2        A.  Did I rely on any of the information?
 3        Q.  Yes.
 4        A.  To calculate manual premium?
 5        Q.  Whatever you did, did you rely upon any of the
 6   information that Ms. Adams was requesting?
 7                MR. HAAS:  Objection, form.
 8        A.  Yes.
 9        Q.  Okay.  And do you have any idea whether the
10   document you provided to counsel has been produced to
11   Companion?
12        A.  I do not -- I do believe so.
13        Q.  You do believe it was?
14        A.  I believe it was, but I'm not sure.
15        Q.  Okay.  And why do you believe it was?
16                MR. HAAS:  Ms. Hauger, I'm going to
17   instruct you not to answer as the question clearly
18   concerns discussions you've had with counsel in this
19   case.
20        Q.  Do you have any reason to believe it was
21   produced other than any conversations you've had with
22   counsel?
23                MR. HAAS:  Objection, form.
24        A.  I do believe some of the information has been
25   provided outside of --
```

Jennifer Hauger - 5/6/2016

44

```
 1        A.   Yes.
 2        Q.   So, you told me that you calculated the final
 3   premium as $6 million, correct?
 4        A.   No.
 5        Q.   Well, maybe I had an out-of-body experience a
 6   few minutes ago.
 7        A.   That was manual premium.
 8        Q.   Okay.  And I asked you whether that's the final
 9   premium, and you said there's no other final premium,
10   right?
11             MR. HAAS:  Objection, form.
12        A.   I did not understand what you were asking.
13        Q.   Okay.  So, you misunderstood what I was saying?
14        A.   Yes.
15        Q.   So, now, what are you going to say?
16        A.   The manual premium was 6 million.
17        Q.   The final --
18        A.   The estimated -- no, not final manual premium.
19   Manual premium.
20        Q.   I asked you about final premium maybe ten
21   times, and you just misunderstood what I was saying?
22             MR. HAAS:  Objection, form.
23        A.   I do believe I had a question as to what you
24   considered final premium.
25        Q.   Okay.  Well, I was asking you, so what do you
```

Collins Realtime Reporting - Dallas, Texas - 214-220-2449

Jennifer Hauger - 5/6/2016

1    consider final premium?

2         A.   I would consider final premium what I believed

3    was owed on the policy.

4         Q.   All right.  And have you calculated that?

5         A.   I do have an estimate of that.

6         Q.   Did you provide that to counsel as well?

7              MR. HAAS:   Objection.  I'm going to

8    instruct the witness not to answer on what she has

9    discussed with counsel.

10        Q.   What's the estimate of final premium that you

11   calculated?

12        A.   Approximately 1.8 million.

13        Q.   And what's the difference between the

14   $6 million figure and the $1.8 million figure?

15        A.   70 percent credit.

16        Q.   70 percent credit for what?

17        A.   It's my understanding of the agreement.

18        Q.   What agreement?

19        A.   Between AMS and Companion.

20        Q.   And the Coverage Agreement we were looking at?

21             MR. HAAS:   Objection, form.

22        A.   No.

23        Q.   What agreement are you talking about?

24        A.   What AMS was to pay under the Florida Master

25   Policy.